STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
RAYMOND F. GARFOLE, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 14, 1976—Supplemental Memoranda December 1
and December 2, 1976—Decided February 25, 1977.

Before Judges LYNCH, MILMED and ANTELL.

*Mr. Thomas A. Pavics*, Assistant Deputy Public Defender, argued the cause for the appellant (*Mr. Stanley C. Van Ness*, Public Defender, attorney).

*Mr. Benjamin D. Leibowitz*, Deputy Attorney General, argued the cause for the respondent (*Mr. William F. Hyland*, Attorney General of New Jersey, attorney).

PER CURIAM. Defendant was charged in a 41-count indictment with a variety of offenses occurring in Cranford, in Union County, on six different dates between March 13, 1971 and March 27, 1972, *viz.*: 10 counts (1, 2, 9, 10, 14, 20, 21, 28, 29 and 36) of threatening to take life (*N. J. S. A.* 2A:113–8); 10 counts (3, 4, 11, 12, 15, 22, 23, 30, 31 and 37) of assault with an offensive weapon (*N. J. S. A.* 2A:90–3); 5 counts (5, 16, 24, 32 and 38) of carnal abuse (*N. J. S. A.* 2A:138–1); 5 counts (6, 17, 25, 33 and 39) of assault with intent to commit carnal abuse (*N. J. S. A.* 2A:90–2); 5 counts (7, 18, 26, 34 and 40) of lewdness (*N. J. S. A.* 2A:115–1); 5 counts (8, 13, 19, 27 and 35) of possession of a pistol or revolver in a public place without first having obtained the requisite permit to carry the same (*N. J. S. A.* 2A:151–41(a)); and 1 count (41) of possession of a dangerous instrument in a public place (*N. J. S. A.* 2A:151–41(c)).

At the opening of trial the prosecutor moved for "a severance with respect to each victim and the various counts involving those particular victims * * *." Defense counsel objected, stating in part:

> We have a defense of alibi. Our defense of alibi pertains to all but two of the charges. Our defense is the defendant on the evenings in question in all cases but two incidents was working, working on the railroad in the tower in Jersey City, where it would have been impossible for him to be at 11:00 P.M. and still have committed these crimes in Cranford. However, two of these incidents are days upon which the defendant was off. * * *

The trial judge denied the application for a severance with respect to counts 1 through 35 which covered a three-month period from March 13, 1971 through June 14, 1971. He granted a severance of the remaining counts (36 through 41) which charge the offenses occurring on March 27, 1972. On the prosecutor's motion, and without opposition, the trial judge then dismissed counts 1 through 27. Defendant was tried on counts 28 through 35, which charged him with the offenses occurring on June 14, 1971,[1] viz.: threatening to take the life of M (female) (count 28), and the life of T (male) (count 29); assault with an offensive weapon upon M (count 30) and upon T (count 31); carnal abuse of M, age 15 (count 32); assault upon M with intent to carnally abuse her (count 33); lewdness with M (count 34), and possessing a pistol or revolver in a public place without first having obtained the requisite permit to carry it (count 35). The jury found him guilty on counts 28 through 34 (count 33 was merged into count 32) and not guilty on count 35.

Defendant was sentenced as a sex offender on the merged counts (32 and 33) to the State Prison Farm at Rahway (Diagnostic Unit) for an indeterminate term with a maximum of 15 years, to run concurrently with a sentence then being served by him in Monmouth County. On count 34 he

---

[1] Counts 30, 32 and 33 erroneously refer to June 14, 1972.

was sentenced to the same institution for a concurrent indeterminate term, with a maximum of 3 years. On each of counts 28 and 29 he was sentenced to the State Prison at Trenton for a term of 8 to 10 years, and on each of counts 30 and 31 he was sentenced to that institution for a term of 3 to 5 years. The execution of these sentences to the State Prison at Trenton was suspended.

On this appeal defendant contends that: (1) "the trial judge committed reversible error when he refused to permit defense counsel to cross-examine officer Deane or present evidence concerning the other crimes charged in the indictment to show that someone other than the defendant committed the crime in question"; (2) "the identifications of the defendant at the lineup were admitted in violation of the defendant's right to counsel"; and (3) "the photographic lineup and in-court identifications of the defendant were so suggestive and unreliable that their admission into evidence violated the defendant's right to due process."

In support of his first contention defendant argues, in part, that

* * * the six crimes outlined in the indictment were so similar in character that the State could have produced evidence of each of the other crimes at the trial below under the "identity" exception of *Evidence Rule* 55; and that, therefore, the defendant should have been permitted to show that he was at work when four of the six crimes were committed to raise the inference that he could not have been the person who assaulted [M] and [T].

He points out that "[d]efense counsel opposed the [prosecutor's] motion [for a severance] on the ground that the six charges were so similar in character that it was obvious that the same person committed all six crimes, such that if the jury believed the defendant's alibi defense to four of the charges they would have to acquit the defendant of all six charges."

As indicated, the acts charged against defendant in the counts on which he was tried (counts 28 through 35) were disputed by him. He claimed that his identity had been

mistaken. In such circumstances, evidence of other acts by someone other than defendant bearing "a high degree of similarity" to the acts underlying counts 28 through 35 would, if properly offered[2] and passed upon beforehand by the trial court, be admissible to prove a pre-existing design, system or plan of such other person which included the doing of the acts charged against defendant in the counts on which he was tried. 2 *Wigmore, Evidence* (3 ed. 1940), § 304 at 204. See also, *id.*, at 202, 205 and § 357 at 266–269; *State v. Bock*, 229 *Minn.* 449, 39 *N. W.* 2d 887 (Sup. Ct. 1949); *Commonwealth v. Murphy*, 282 *Mass.* 593, 185 *N. E.* 486 (Sup. Jud. Ct. 1933); *Holt v. United States*, 342 *F.* 2d 163 (5 Cir. 1965). Where "the effort is to establish a definite prior design or system which included the doing of the act charged as a part of its consummation," there "must be," in regard to the several acts, "not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*" 2 *Wigmore, op. cit.*, § 304 at 202. "The device used must be so unusual and distinctive as to be like a signature." *McCormick, Evidence* (2 ed. 1972), § 190 at 449. To be admissible, the evidence of other crimes must disclose "a distinctive *modus operandi* common to both the other crimes and the charged crime." *People v. Haston*, 69 *Cal.* 2d 233, 70 *Cal. Rptr.* 419, 426–427, 444 *P.* 2d 91, 98–99 (Sup. Ct. 1968). See also, *State v. Sempsey*, 141 *N. J. Super.* 317, 323 (App. Div. 1976).

Here, the requisite offer to establish such "high degree of similarity" was not made in the trial court. See 2 *Wigmore, op. cit.*, § 304 at 205; *Evid. R.* 8. And see, *United States v. Hullman*, 142 *U. S. App. D. C.* 93, 439 *F.* 2d 603, 605 (D. C. Cir. 1971). Noting the absence of a proffer of such

---

[23] *Wharton's Criminal Procedure* (12 ed., Torcia, 1975), § 496 at 387.

evidence at the trial,[3] counsel for defendant on this appeal has applied for an expansion of the record before us to include the statements of the victims in the counts of the indictment which were dismissed, *i. e.,* counts 1 through 27. He suggests that these statements show the required similarity. We allow the belated effort but find it woefully wanting. From our examination of the statements submitted we are entirely satisfied that the "other like crimes" were not "so nearly identical in method [with the crimes of which defendant was convicted] as to earmark them as the handiwork of" one person, *McCormick, op. cit.,* § 190 at 449, and that, accordingly, the trial judge did not mistakenly exercise his discretion in rejecting the attempt of defendant's trial counsel to adduce, through cross-examination of officer Deane or otherwise, evidence of the acts involved in the counts of the indictment which were dismissed. See *Evid. R.* 4. It is undisputed that the May 1, 1971 incident did not involve any sexual acts. Beyond this, none of the other incidents described in the statements submitted by counsel involved, as here, coerced fellatio. Additionally, in the May 12, 1971 incident, when the victim started to cry and then screamed, the attacker "grabbed" her "by the neck with both hands and started to chock [*sic*]" her. And, regarding the May 14, 1971 incident, the victim said that "[t]he man never got violent, he was very gentle."

In his dissent our colleague lays substantial stress upon what he terms a "tripartite consensus" in the trial court that "enough similarity prevailed among the offenses as to establish that they were the work of a single individual." What our colleague refers to as an "accord" was merely a conglomeration of conjectures and surmises. What he overlooks is the fact that there was no evidence before the court on the

---

[3]In his affidavit of December 2, 1976, attached to his "Notice of motion to expand the appellate record," counsel for defendant states, in part: "The evidence, which was in the possession of trial counsel at trial, was not offered at trial because neither the court below nor defense counsel requested a proffer of evidence."

subject. Even at this late stage, all we have before us are the statements which have been submitted by counsel for defendant with his application for expansion of the record on appeal, and the undisputed statement by the prosecutor to the court before the trial began that the June 14, 1971 offense and the March 27, 1972 offense[4] show "basically the same factual pattern." It appears that as to these two offenses defendant cannot suggest an "alibi." The prosecutor's statement, which as we have said was not disputed, pointed out that:

It is the contention of the State that the offense that occurred on June 14th — and I represent this at this time — June 14, 1971 consisted of basically the following fact situation: The victim, [M], was approached by the subject and a gun was taken out by the subject, at which time the subject said don't scream, I won't hurt you, don't be afraid. She was then taken to a park and subsequently molested, a certain procedure of molestation. The weapon was once — the individuals were once again threatened by the weapon, fellatio was committed during the molestation. At the end of the physical assault itself the defendant said something to the effect — and this is just general — forgive me, I need help, I'm sick and I know I'm sick.

Now, on the offense of March 27, 1972 we have basically the same factual pattern. The victim is approached this time with an ice pick. Don't move. I won't hurt you. She's taken down to a cellar stairway apparently and molested at that location; same type of molestation, same factual situation, an apology at the end. Same situation, your Honor. There are identifications in both situations. * * *

We further note that few of the "similarities" which our colleague points out apply to all of the offenses. Thus, in attempting to show "similarities" between some of the offenses, he necessarily accentuates the dissimilarities with the remaining offenses.

We have considered each of the two remaining contentions of defendant in our review of the record submitted on this appeal. We find that each of the issues thus raised by him

---

[4]Concerning which no statement was submitted by counsel for defendant.

is clearly without merit. *R.* 2:11–3(e)(2). See *Kirby v. Illinois,* 406 *U. S.* 682, 92 *S. Ct.* 1877, 32 *L. Ed.* 2d 411 (1972); *State v. Earle,* 60 *N. J.* 550, 552 (1972); *State v. Bono,* 128 *N. J. Super.* 254, 261 (App. Div. 1974), certif. den. 65 *N. J.* 572 (1974).

Affirmed.

ANTELL, J. A. D. (dissenting). I respectfully dissent. I do so because the Court's limited treatment of the facts avoids the disagreeable reality that the defendant suffered a basically unfair trial.

It must first be noted that the issues have been essentially transformed during the appeal. The ruling presented for review was made during cross-examination of the State's witness, Detective Deane. Objection was made and sustained to the first question of a line aimed at showing the similarity between the facts of the other crimes and those for which defendant was being tried. Thus, defendant sought to lay a foundation for his proof that he did not commit those offenses and therefore did not commit the ones for which he was on trial. The judge ruled as he did, not because he had already decided that the crimes were dissimilar, but because he did not "see the relevancy of any alibi for an occasion for which he is not on trial." He apparently believed that while *Evid. R.* 55 permitted proof of "other like crimes" evidence to prove defendant's guilt of the charges for which he was being tried, there was no authority to permit such evidence as proof of his innocence. This notion governed his thinking when he said:

\* \* \* should the prosecutor introduce under Rule 55 evidence of prior crime with prior identification to prove the fact in issue, namely identification, then with respect to that testimony I would permit counsel to introduce alibi evidence.

The issue of whether all these crimes were sufficiently similar was not even debated, for at the very outset of the trial the

judge had expressed his complete satisfaction that the requisite similarity did in fact exist.

That the trial judge erred in ruling the alibi evidence irrelevant is clear, and because this was prejudicial in the extreme a reversal and remand is clearly required. The court acknowledges that the proposed evidence was relevant, but now somehow shifts the focus of the appeal to the question of similarity — something which was the very premise of the indictment and as to which there was no disagreement below. In furtherance of its study, after oral argument the court called for supplemental memoranda dealing with the evidence on this point, and it was in response thereto that defendant's motion to expand the record was made. As the court's opinion notes, this motion was granted and the police statements given by the witnesses in all cases but one are now before us. I do not agree that the issue of similarity is even properly to be considered. However, since it must be faced I must conclude that these documents confirm the soundly based mutual understanding in the trial court that the offenses were all sufficiently similar.

I touch on this aspect of the record now to neutralize the suggestion implicit in the court's opinion that the defendant's motion to expand the record was made in recognition that he should have made a "proffer of such evidence at the trial." What the court is saying is that defendant was somehow obliged to "proffer" the very evidence he was trying to uncover by his cross-examination of the officer. But this sidesteps the fact that defendant was endeavoring to do what the court holds he should have done, *i. e.*, show that the crimes were all committed by a single individual as a condition to showing that he was not that individual. When he was stopped by the judge he explained the relevancy of his inquiry and what facts he expected to develop. This was all he could have done under the circumstances.

At the risk of repetition I must review the factual and procedural setting from which the appeal is generated.

Defendant was indicted October 3, 1972 on multiple charges arising out of six vile attacks upon young girls 12 to 16 years old in the Township of Cranford. The numbers which I will assign to these events and the dates of their occurrence are as follows:

1. March 13, 1971 : Counts 1–8.
2. May 1, 1971   : Counts 9–13.
3. May 12, 1971  : Counts 14–19.
4. May 14, 1971  : Counts 20–27.
5. June 14, 1971 : Counts 28–35.
6. March 27, 1972: Counts 36–41.

The defendant was arrested on the charges September 14, 1972. He demanded a lineup, denied his guilt, and continues to do so.

On March 11, 1974 the indictment was moved for trial. Before selection of the jury the prosecutor moved for severance of all the grouped counts of the indictment, "in the interest of justice with respect to the defendant." As the prosecutor eloquently added:

> As an officer of the court * * * I am duty bound to point out this prejudice in any trial of any defendant, and I do so respectfully. The trial of this indictment in its entirety would, no doubt in my mind, prejudice the defendant to a great extent.

As everyone recognized, the risk of prejudice lay in the enhanced willingness of a jury to believe in the defendant's guilt where it knows that he is charged with a multitude of similar crimes.

It appears from the record that this move took defense counsel by surprise. Apparently he had himself made such a motion a few weeks earlier on the same grounds which was opposed by the prosecutor and denied by the judge. He opposed the prosecutor's application because he was now prepared to prove an alibi as to four of the six incidents; he reasoned that all of the offenses were, according to the indictment, committed by the same person, and that if he

created a reasonable doubt as to any of the incidents, the jury could well find a reasonable doubt of his guilt as to all. His concern evidently was that if all the counts were not moved for trial at the same time, his right to show that he was innocent of these "other like crimes" would be curtailed.

In addressing himself to the motion the trial judge first observed:

There did appear to be a common scheme and perhaps so common that it would strongly point to the fact that one person committed these offenses.

He granted the motion to sever with respect to case number 6 out of concern that "because of the widespread divergence in dates that undue prejudice can result to both the State and the defendant."[1] He denied the motion as to the remaining 35 counts associated with the other five incidents. Clearly, he had concluded these crimes were all committed by the same person.

Within moments after the trial judge's ruling the prosecutor moved to dismiss the first 25 counts of the indictment, those arising from cases 1 through 4. But the reason he now gave was that his witnesses

* * * have undergone such a state of mental anxiety during this time many of them in my interview have just been unable to discuss the situation whatsoever. They have a state of fright return to their face and they remain speechless.

It was as though the prosecutor's pretensions of concern for defendant's rights had never been expressed. Contrary to what he told the trial judge, the possibility of prejudice to defendant was the last thing on his mind. He moved for

---

[1]The trial judge's concern with "prejudice" is difficult to understand. Defendant wanted all the charges tried together, and the State was responsible for the situation in the first place by procuring the multiple-count indictment.

a severance only because he had no witnesses and could not prove those cases. At the same time he wanted to keep the charges open for purposes of plea bargaining without revealing the State's weakness to defendant. If there is any doubt about this it is surely put to rest by his next application. This was to allow testimony of the assault on the victim in case number 6, to establish defendant's identity in case number 5 under *Evid. R.* 55, even though this evidence was of the very same kind from which the prosecutor said he wanted to shield defendant on the motion to sever.[2] Based on the concurrence of all concerned that there was a "similarity" between the offenses, the trial judge granted the motion, ruling that this testimony would be received against defendant upon the trial of case number 5.[3]

Thus, as matters stood at the time of the pretrial motions and when the rulings were made on cross-examination of Detective Deane, there was accord between the judge and both counsel that enough similarity prevailed among the offenses as to establish that they were the work of a single individual. The judge said so, as did defense counsel. The prosecutor argued similarity as to cases 5 and 6. He equivocated as to cases 1 through 4, but the indictment leaves no doubt as to the State's position that all six incidents involved only one person.

The issue with which this court chooses to concern itself is whether this tripartite consensus was correctly arrived at below. To determine this we now have before us the police statements taken in connection with cases 1 through 4, the testimony as to case number 5 for which defendant was

---

[2]Note that this is the case as to which the motion to sever was granted "because of the widespread divergence in dates," having occurred more than nine months after case number 5. It is further distinguishable from all of the others in that it is the only one in which no handgun was used.

[3]This witness was qualified to testify after an identification *voir dire*, but for unexplained reasons the prosecutor did not call her to testify.

tried and convicted, the prosecutor's comments on the record as to case number 6, and that victim's *voir dire* testimony bearing upon her lineup identification of defendant. We have not been furnished with her police statement. From this material the following picture emerges:

Except for one, all the attacks occurred approximately within a square quarter-mile in the vicinity of Cranford Junior High School. The exception, case 3, took place about a half-mile from the site of the others, although the assailant began stalking his victim there. The time of the attacks fell within 10 and 11 o'clock.

Cases 1 and 2 each involved two girls who were together. In cases 4 and 5 the girls were in the company of a young male companion. In cases 3 and 6 the girls were alone. His method was the same in all cases. He approached his quarry on an empty street, grabbed them and ordered them to do as they were told. In all cases except case number 6 the attack was supported by the use of a handgun which he kept in view at all times and which he held to the victims' heads at different times during the attack. In case number 6 he used an icepick. In all cases the victims were led from the street to a secluded location where the sexual assaults were carried out. Case number 2 did not go beyond the preliminaries; he seized the youngsters, showed the gun, threatened them, and confined his conversation to the subject of drugs. He left them to get a "fix" downtown. In cases 3, 4 and 5 he interspersed his conversation with talk about drugs, his need for them, their effects and references to being "high." As to case number 6 there is no such information, but I note again that it was as to cases 5 and 6 that the prosecutor made his most vehement argument that they were committed by the same person.

Estimates of his height ranged from 5'6" to 5'11", but the spread can be attributed to miscalculation and inexperience in making such observations. There were even variations of a few inches in the estimates offered by two victims of the same attack.

All agreed that the attacker was white and between 35 and 40 years old. In cases 1, 2, 4 and 5 the victims commented upon a slurred speech characteristic and a kind of crude street diction. In cases 2, 3, 4 and 5 he was described as having a moustache, and in cases 1, 2, 3 and 4 his sideburns were described as bushy and below ear level. In all cases the victims said he was a heavy man, obviously overweight. In cases 1, 2, 3 and 5 the fact that he had a large "protruding" abdomen was particularly noted as a distinctive characteristic.

In all six cases he assured his victims that he would not "hurt" them. Despite his threats and use of a gun, his manner was described as mild, and in case number 4 even "gentle."

The feature common to all of the sex attacks was that although there were instances of carnal touching, in no case did he complete a vaginal penetration. In other respects the details varied, but they all included undressing, intimate handling, kissing and, in case number 5 for which defendant was convicted, coerced fellatio. In cases 1, 3 and 4 he told his victims he only wanted to "feel" them. In cases 1, 3, 4 and 5 he exposed himself and forced the victim to handle his penis. In cases 1, 4 and 5 the sex victim's companion was ordered to stand nearby and not to call out during the sexual assault. In cases 4 and 5 the gun was held to the heads of the male companions and they were told he did not want them to be "heros." After all five sex assaults he was apologetic, almost remorseful, and explained to the boys in cases 4 and 5 that he was "sick." He said he "forgave" one of the girls in case number 1 for hitting him, and told the victim in case number 3 that she was a "very nice person."

To be sure, there are differences to be found, but in the face of their numerous significant resemblances the court's opinion that the defendant's showing of the required similarity is "woefully wanting" because one case did not culminate in a sexual assault and because there was only one

instance of fellatio is difficult to understand. It seems to me, as it did to the grand jury that returned this indictment, the prosecutor who procured and authored it, as well as the court and counsel below, that all of these crimes were almost certainly committed by one and the same person.

In applying the test of whether there was a "high degree of similarity," which is germane in cases arising under *Evid. R.* 55, I wonder if the court is mindful that this standard was formulated to protect defendants from the potentially great prejudice inherent in "other like crimes" evidence when offered by the State. *State v. Sempsey*, 141 *N. J. Super*. 317, 323 (App. Div. 1976); 2 *Wigmore, Evidence* (3 ed. 1940), § 304 at 204. Here the purpose of the offered evidence was to negative the defendant's guilt, and the same considerations do not prevail as in the other type of situation. The three leading cases dealing with the admissibility of a defendant's evidence that he was innocent of "other crimes" do not seem to follow such a rigorous standard. *Holt v. United States*, 342 *F*. 2d 163 (5 Cir. 1965); *State v. Bock*, 229 *Minn.* 449, 39 *N. W.* 2d 887 (Sup. Ct. 1949); *Commonwealth v. Murphy*, 282 *Mass.* 593, 185 *N. E.* 486 (Sup. Jud. Ct. 1933). They appear to allow the receipt of such evidence where it is "not too remote in time, nor too weak in probative quality, and where it was so connected with the act forming the issue on trial as to indicate a relevant relationship." *Holt, supra* at 165. But even applying the "high degree" standard, *i. e.*, that the conduct in question "be unusual and distinctive so as to be like a signature," in *State v. Sempsey, supra,* the court allowed over defendant's objection evidence of his involvement in an assault 5½ months before the one for which he was being tried. This was based upon the following statement of facts:

Both attacks occurred late at night. Defendant knew the victims in both instances from having worked in their apartments and thus knew there were no men residing with them. In both instances the eyes of the victims were taped to conceal the attacker's identity; he

wore peculiar head gear, a dark jacket and pants. In both instances the attacker possessed a gun and upon leaving instructed the victims to count or he would shoot. The victims were threatened with death if they screamed. He smelled of grease, was unable to obtain an erection and resorted to fellatio. [141 *N. J. Super.* at 323–324]

With regard to differences between the two events the court added:

Defendant stresses certain dissimilarities in the attacks. However, none is of such a nature as to eliminate him as being involved in the second crime. The jury was carefully instructed on the limited use they were to make of this evidence. *Evid. R.* 6. It was not error to admit the testimony of K for the limited purpose of establishing the identity of defendant. [at 324]

If the unfairness of rejecting the defendant's evidence is still not clear, it is perhaps because I have not yet brought out that even though defendant did not take the stand the proofs raised a serious question of identification.

Defendant's height was between 5'10" and 5'11". He introduced credible evidence from his employer's records that his weight had come down from 185 pounds in 1966 to 164 pounds in 1970, and that thereafter it remained between 160 and 165. He did not have a protruding abdomen when arrested and he presented testimony that he did not have one during the years following 1970.

Both the boy and girl victims in case number 5, for which he was tried and convicted, originally reported the attacker's height to the police as 5'6" or 5'7". The girl herself was 5'7" and the boy around 6'. They agreed he was very heavy and had a protruding abdomen. The boy reported his weight as 200 pounds, but the officer taking his statement "got a little flustered" and explained that a man so small would not weigh 200 pounds. They then "agreed" on between 180 and 200 pounds, although the boy's belief continued that he was "extremely heavy." At the lineup he felt he recognized defendant's face, but "he had a completely different color hair." Furthermore, he told the officer at the lineup that "the face is him, the body isn't. Facially

you've got a match, the body you don't." He testified further, "the body just doesn't match; so, no, I wouldn't positively identify him." He made the identification only after he was told defendant had recently lost a great deal of weight.

From the proofs it is therefore seen that the question of whether he is the guilty party was not trouble free. As to the other 27 counts, those that were dismissed, the prosecutor's explanation for not proceeding was that his witnesses were "speechless." Counsel for defendant was skeptical about this and replied that it was his understanding that the witnesses were simply unable to say that defendant was actually the attacker. The witnesses themselves were not presented to the trial judge for interrogation. In light of what has been said about the common identity of the person responsible for all the incidents, the likelihood that none of these victims could identify defendant was a matter of momentous import and called upon the trial judge to perform the most exacting appraisal of the prosecutor's representations. Let us give these our attention now.

At the time of the trial the youngest of the girls was about 15½ years old and the oldest almost 19. Two of them, respectively almost 18 and 19, had not even been subjected to any sexual abuse and therefore would not have had to relate this degrading experience. One of the witnesses was the male companion in case number 4, and he was just a few months short of being 20 years old. Was he also in a state of hysteria? All had been interviewed by the police, had spoken frankly and in considerable detail about these incidents and signed written statements which embodied the substance of what they said.

Recognizing that there are occasions when the trial of an indictment is frustrated because of a recalcitrant witness, the occurrence is relatively infrequent. The cooperation of criminally aggrieved witnesses is usually fueled by a desire to vindicate their sense of justice, but where this is lacking they almost invariably respond to the compulsion of court

process, and I would certainly expect that the chief law enforcement officer would resort to such process where necessary in prosecuting the criminal business of the county. This would be especially so in as serious a matter as this.

None of the witnesses involved were children of tender years in March 1974, nor is there anything to suggest that they were in fear of reprisals. It is a most extraordinary thing that from among these seven young people, one of them a man, the prosecutor was unable to find any who were under sufficient emotional control to give incriminating testimony against defendant — assuming that it lay within their consciences to give.

Bearing in mind his cynical lack of candor with the trial judge and counsel on the motion to sever, the gravest questions were projected as to the prosecutor's veracity. These should have been perceived by the trial judge. He should have recognized the situation for what it was and how imperative it was to defendant that he be allowed to show his innocence of these other crimes. Such proof, taken together with the almost certain evidence as to the common identity of the attacker, could well have mandated his acquittal on the charges for which he was tried.

As the court's opinion notes, the defendant was sentenced to a 15-year indeterminate term on his conviction. If he was guilty of these offenses the sentence is clearly appropriate. However, I think there may have been a miscarriage of justice and I would remand for a new trial.