COMMONWEALTH *vs.* JAMES A. MURPHY.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk.    March 6, 1933. — April 17, 1933.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Evidence,* Of identity, Court record.

At the trial together of four complaints for larceny, it was admitted that the same man, on different occasions in May and June, defrauded each of four women by representing to her that he wished to hire an apartment from her and by indorsing to her order a worthless check bearing fictitious names which he had drawn, receiving from her in cash the difference between the amount of the check and the amount of the deposit requested by her for the apartment. Each of the four women identified the defendant as that man, and their testimony was the only evidence of identity. The defendant offered, and the trial judge excluded subject to the defendant's exceptions, three checks drawn in April, July and September; evidence that the typewriting and hand-

writing on the three checks were the same as those on the four checks, that three other women had been defrauded by use of the three checks in the same manner as that in which the four checks had been used, and that the defendant was in custody on the day when one of the three checks was so used; testimony by the three women that the defendant was not the man who had defrauded them; and court records showing that the defendant had been acquitted on complaints based on two of the three checks. The defendant was found guilty. *Held*, that

(1) The records of the defendant's acquittal were incompetent;

(2) Although the determination of the question, whether the other evidence offered by the defendant was of sufficient probative quality and sufficiently near in time to and connected with the occurrences upon which the four complaints were based, rested to some extent in the discretion of the trial judge, his decision was not absolute and might be reversed by this court if justice so required;

(3) Such evidence, while not conclusively establishing the defendant's innocence of the offences charged, was relevant for consideration by the jury with the other evidence upon the issue of the defendant's identity with the man who perpetrated the frauds;

(4) The exclusion of such evidence was prejudicial error, and the defendant's exceptions were sustained.

FOUR COMPLAINTS, received and sworn to in the Municipal Court of the West Roxbury District of the City of Boston on June 2, June 22, June 25 and June 27, 1931, described in the opinion.

Upon appeal to the Superior Court, the complaints were tried together before *Hayden,* J., a judge of a district court sitting in the Superior Court under statutory provisions. Material evidence, and evidence offered by the defendant and excluded, is described in the opinion. The defendant was found guilty on each complaint and alleged exceptions.

*A. D. Hill,* (*A. H. W. Higgins* with him,) for the defendant.

*W. J. Foley,* District Attorney, *& A. F. Iovino,* Assistant District Attorney, for the Commonwealth, submitted a brief.

WAIT, J. The defendant was found guilty by a jury upon four complaints, which were tried together, and which charged him with larceny from Mrs. Drummie on May 30, 1931, from Mrs. Boyle on June 17, 1931, from Mrs. Boggie on June 16, 1931, and from Mrs. Drew on June 22, 1931, respectively. At the trial both prosecution and de-

fence admitted that sums varying from $15 to $25 were obtained on the respective dates from the women, by a man who came to them and represented that he wished to hire an apartment. He told substantially the same story to each, saying that he had regular employment and had a wife and daughter who could not come to see the apartment that day but would come to see it in a few days. He gave to each a check as deposit for the apartment, and received the balance above the deposit in cash. Each of the four checks was drawn upon The National Shawmut Bank of Boston for $45. The bank had no account with the makers named. The names of the makers and of the payees were different. The checks bore the dates May 12, June 16, June 16, and June 22, 1931, respectively. The man indorsed each of them in the name of the payee borne on the check, in the presence of the woman to whom it was given. All the checks, it was admitted, were drawn, indorsed and delivered by the same man. Each of the four women identified the defendant as the man who defrauded her. The woman defrauded on June 17 testified that the man called about 10:30 A.M., went away because the occupant of the apartment was asleep in it, came back, as agreed, about 11:30 A.M. and gave the check. The woman defrauded on June 18 testified that the call was between 10 and 11 A.M. She said she recognized the defendant as the visitor because he had two pairs of glasses, one for ordinary use, the other for reading as was the case with the visitor. The defendant testified that he was an automobile salesman, at the time of the alleged offences, employed as salesman for Ford cars, that he had never seen the four women or had any dealings with them, that he could not remember his movements on May 13 or June 22, but was at home and working about his house on June 17 and 18. His wife, his son, and the occupant of another apartment in their house testified that he was engaged about the house on the seventeenth and eighteenth of June, the holiday enabling them to fix those days, whereas nothing made the thirteenth or the twenty-second stand out in their minds. There was no evidence connecting the defendant with the offences

other than the identifications by the several women. The only issue of fact in controversy was the identity of the giver of the checks with the defendant.

The defendant offered in evidence checks dated April 21, 1931, drawn on The National Shawmut Bank of Boston, and checks dated July 18 and September 30, 1931, drawn on The First National Bank of Boston, with evidence of an expert in handwriting that the typewriting and handwriting upon them were by the same person who had typed and written upon the four checks complained of; and with evidence that about their dates they had been delivered to three other women by a man who had told substantially the same story to each which had been told the four to whom checks had been passed in the cases at bar, and had obtained money upon them in the same way. The names of makers and payees differed from those on the four checks in evidence. The two earlier were drawn for $40, and that of September 30 was for $45. Further offer was made that the recipients of the checks of April 21 and July 18 would testify that the defendant looked somewhat like but was not the man who gave and indorsed the checks to them. In connection with the check dated September 30 offer was made to show that on the day it was indorsed and delivered to Margaret Noonan in East Boston, the defendant was in custody; that Mrs. Noonan made complaint, identified the defendant as the man who delivered it, so testified at a trial which resulted in the defendant's acquittal, and will testify that she has since seen a man she believes to be the giver of the check in East Boston, and is satisfied she was in error and that the defendant is not that man. Further the record of the court in East Boston and acquittal of the defendant in the Noonan case, and the record of the Municipal Court of the West Roxbury District and acquittal of this defendant therein upon a complaint based upon the check dated April 21, were offered in evidence. Subject to exception, the trial judge excluded the checks, the testimony, and the records offered. The question before us is the propriety of his ruling.

No one, we think, will deny that if the evidence offered is

the truth it well might shake confidence in the identifications upon which alone this conviction rests. It would demonstrate that on October 1, when the defendant was in custody and unable to be in East Boston, another man, the one who typed, wrote and indorsed the checks for which the defendant has been held responsible, was at large, telling the very story attributed to the defendant, passing and indorsing in the hand used on the check here in issue a check drawn for the same amount as the checks the defendant is accused of passing, defrauding trusting women in the same way — a man who resembles the defendant, but is not and cannot be he. It shows that one woman was certainly mistaken, and is willing to say so. It indicates that two others who met the man who writes and acts as the defendant is accused of doing are ready to testify that he is not the defendant. It does not establish his innocence. The handwriting on the seven checks may not all be that of one man. Two thieves may have worked together to protect one another by following the same plan and acting and looking in the same way. It does not follow that, because one did not do a thing on October 1, he did not do a similar thing in May and June. Acquittals in two courts do not establish freedom from guilt on a different charge on a different date in a different court. Mistake in identification by one person does not prove another one wrong. These are considerations for a jury. But, owing to the ruling, no jury has passed upon them. Unless some positive rule of law prevents, it would seem that the defendant is entitled to have a jury consider the evidence, pass upon its credibility and weigh it with the evidence of identification upon the issue of his guilt.

We find no such positive rule. It is established law that to show that A did not do a particular thing, evidence is admissible to show that some one other than he did it, or had motive, intent, opportunity and is as likely as A to have done it. *Commonwealth* v. *Abbott,* 130 Mass. 472, 475. *Greenfield* v. *People,* 85 N. Y. 75, 89. *Carlton* v. *People,* 150 Ill. 181. Before such evidence is admitted, however, it must be shown to be not too remote in time, *Commonwealth* v. *Abbott,* 130 Mass. 472, not too weak in probative quality, see

*Edwards* v. *Davis*, 198 Mass. 441, and so connected with the events on which A's responsibility is predicated as to indicate that it is closely related to the facts of the case against A and forms part of that happening. *Commonwealth* v. *Abbott*, 130 Mass. 472. *Jordan* v. *Osgood*, 109 Mass. 457. *Commonwealth* v. *Campbell*, 7 Allen, 541. *Greenfield* v. *People*, 85 N. Y. 75. *Carlton* v. *People*, 150 Ill. 181. *State* v. *Baxter*, 82 N. C. 602. Whether it meets these conditions must be decided, in the first place, by the trial judge. The admission or rejection rests in his judicial discretion, and the result of his exercise of that discretion will not ordinarily be disturbed by an appellate court. Nevertheless the decision is not absolute. It may be set aside if the appellate court is satisfied that justice requires a different decision. *Commonwealth* v. *Jackson*, 132 Mass. 16. *Bemis* v. *Temple*, 162 Mass. 342. *Jordan* v. *Osgood*, 109 Mass. 457. See *Commonwealth* v. *Trefethen*, 157 Mass. 180; *Sargent* v. *Merrimac*, 196 Mass. 171. The evidence here offered is largely of happenings in which those concerned in the cases before the court took no part. It relates to criminal acts perpetrated at a different time. Such evidence is frequently excluded upon the ground that it introduces collateral issues likely to distract attention from the main issue and unduly to prolong a trial. See *Hardy* v. *Martin*, 200 Mass. 548; *Yore* v. *Newton*, 194 Mass. 250. But this will not sustain all exclusions. *Bemis* v. *Temple*, 162 Mass. 342, 344. Nor is it true that the happenings are to be excluded simply because they constitute criminal offences. *Commonwealth* v. *Jackson*, 132 Mass. 16. The cases dealing with evidence of other criminal acts have to do generally with offers of proof of other crimes committed by the defendant tendered by the prosecution and calculated to prejudice the jurors against the defendant; but even in such cases the evidence is admitted if the acts form part of a connected whole establishing knowledge, intent, motive, method, material to proof of the crime charged. *Commonwealth* v. *Robinson*, 146 Mass. 571. *Commonwealth* v. *Kosior*, 280 Mass. 418.

The decisions from our reports cited by the Commonwealth do not require that the evidence be excluded. *Commonwealth* v. *Abbott*, 130 Mass. 472, recognizes as law the principles just

stated, but found no such connection in time or otherwise between the circumstances offered by the defendant and those of the murder there on trial as to justify reversing the ruling by the trial judges excluding them. In *Commonwealth* v. *Jackson*, 132 Mass. 16, the trial judge's ruling was overturned and evidence of former frauds committed by the defendant offered by the prosecution was held to have been wrongly admitted. Obviously the defendant might have been prejudiced. Had he, for any reason, offered the testimony, a different result might have been reached, for then he could not have complained of prejudice. In *Commonwealth* v. *Campbell*, 155 Mass. 537, similar considerations led to a like result. The decision in *Costelo* v. *Crowell*, 139 Mass. 588, where the evidence held to have been properly excluded was offered by the opposing party, goes upon the ground of the introduction of collateral issues and of prejudice to the party in the proof, not of his guilty knowledge or intent, but of the fact that any forgery had been committed. It is not in point here where the question is of identity of the doer of acts admitted to have taken place and offer of proof of similar acts one at least of which the defendant could not have done. In *Jordan* v. *Osgood*, 109 Mass. 457, the decision rests on the failure of the opposing party to connect closely enough with the particular fraud he relied upon, the evidence of similar frauds nearly contemporaneous offered by him to show the other's turpitude. Nor do the cases cited from other jurisdictions so require. *Brown* v. *State*, 120 Ala. 342. *Carlton* v. *People*, 150 Ill. 181. *Greenfield* v. *People*, 85 N. Y. 75. *State* v. *Baxter*, 82 N. C. 602. *Irvin* v. *State*, 11 Okla. Crim. 301. *Horn* v. *State*, 12 Wyo. 80. In *Carlton* v. *People*, 150 Ill. 181, at page 188, it is suggested that another result would follow had the facts offered been more closely connected with the event. All recognize as law the principles here stated. See *Altman* v. *Ozdoba*, 237 N. Y. 218.

The records of acquittal were incompetent.

We reach our conclusion without attaching any considerable weight to the fact that the conviction rests only on evidence of identification. Such evidence stands like other evidence derived from the use of the senses. It may be re-

liable and it may not be. In this case the jurors evidently found it reliable. We do not question their conclusion; but we think there was additional evidence offered which the accused was entitled to have them consider in connection with what they had.

*Exceptions sustained.*