COMMONWEALTH vs. STEPHEN KEIZER.

Suffolk. November 8, 1978. — February 7, 1979.

Present: QUIRICO, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Evidence,* Exculpatory, Declaration against interest.

The judge at the trial of a defendant charged with armed robbery
    erred in excluding evidence that, a few days after the robbery for
    which he was indicted and while he was in custody, a similar rob-
    bery occurred which was committed by similar methods in the same
    vicinity by three males of similar description to those who par-
    ticipated in the first robbery. [266-268]
At the retrial of a criminal case, this court's decision in *Common-
    wealth* v. *Carr,* 373 Mass. 617 (1977), would apply to allow the
    admission of hearsay testimony which constitutes declarations
    against penal interest if accompanied by indicia of reliability. [268-
    271]

INDICTMENT found and returned in the Superior Court
on February 20, 1976.

The case was tried before *Tamburello, J.*

The Supreme Judicial Court granted a request for di-
rect appellate review.

*Beth H. Saltzman* for the defendant.

*Thomas J. Carey, Jr.,* Assistant District Attorney, for
the Commonwealth.

LIACOS, J. The defendant was convicted of armed rob-
bery (G. L. c. 265, § 17) by a jury and sentenced to serve
a term of from twelve to eighteen years at the Massa-
chusetts Correctional Institution at Walpole. He took an
appeal and applied for direct appellate review which we
allowed. Due to the improper exclusion at trial of certain
exculpatory evidence, we reverse. We state the facts
briefly.

At approximately 10:30 P.M. on February 8, 1976, two men, one with what appeared to be a square-barrelled pistol, the other with what appeared to be a sawed-off shotgun concealed by a paper bag,[1] entered the office of a Merit Gas Station on Columbus Avenue in the South End of Boston. Both men were black. A third black man, apparently a participant in the enterprise, paced outside the office. In the office at the time were the assistant station manager, Darnell McCarter, and two attendants, Ernest McNealy and Matthew Gardner. After taking $325, the robbers herded the employees into a back room and left.

McCarter was the Commonwealth's chief witness and gave the following testimony at trial: The office in which the robbery took place was well lit, and she had a good opportunity to view the robbers. As the men entered, the man with the shotgun approached the manager's desk where she was sitting, conducted a search, and took the money lying on the desk as well as $15 from her person. Later that evening, McCarter described this man as 5'10" to 6' tall; she described the man with the pistol as 5'8" to 5'10" tall. The next day she made a positive photographic identification of the defendant as the man with the shotgun; she again identified him at the arraignment and trial.

Two police officers corroborated McCarter's pretrial photographic identification. A third officer testified to a composite description of the culprits based on the impressions of all three victims and obtained on the night of the robbery. The man carrying the shotgun, allegedly the defendant, was described as being 5'6" in height and of medium build.

The defendant's defense was alibi, as to which he presented three witnesses. Additionally, he called as defense witnesses the station employees, McNealy and Gardner. Both testified that the man holding the shotgun was

---

[1] The prosecution produced neither weapon.

about 5'6", noticeably shorter than the man with the pistol. The defendant is 6'2". Moreover, both testified that it was the man with the pistol who took the money from McCarter while the man with the shotgun stood guard. Although Gardner had made a tentative photographic identification of the defendant on the day following the robbery, neither he nor McNealy was able to identify the defendant at trial as the man with the shotgun.

The defendant sought to introduce two items of exculpatory evidence, both of which were excluded by the trial judge, without benefit of a voir dire. The defendant excepted, made offers of proof, and argues that both rulings constitute error. For the reasons stated below, we agree as to his first contention, and do not reach the merits of the second claim of error.

1. *Evidence of Other Crimes.*

The defendant sought to introduce evidence of a robbery committed by similar methods while he was in custody so as to implicate someone other than himself as the probable perpetrator of the crime charged. To this end, the defendant offered to prove that on February 10 or 11, he was taken into custody and remained in custody until his trial; that on February 12 a Linnell Young and two other men were arrested in possession of a paper bag containing two sticks, which resembled a shotgun, and a cigarette lighter in the shape of a square-barrelled handgun; that all three were charged with committing armed robbery of Pete's Market in the Roxbury section of Boston on the evening of February 11; and that the man arrested with the "shotgun" was about 5'3" and another person arrested was about 5'8" to 5'10". In addition, the major prosecution witness, McCarter, had testified that approximately two weeks after the gas station robbery she had made a positive photographic identification of Linnell Young as the man who held the pistol. The defendant argued that this evidence came within the rule of *Commonwealth* v. *Murphy*, 282 Mass. 593 (1933), which permits introduction of evidence tending to show that a per-

son other than the accused committed the crime charged. The trial judge found, however, that the facts offered were not closely related to the facts of the case against the defendant, and excluded the evidence.

Although the decision of a trial judge to admit or reject evidence of other crimes ordinarily will not be disturbed, that decision is not absolute and may be set aside if justice requires a different result. *Commonwealth* v. *Murphy, supra* at 598. Cf. *Commonwealth* v. *Graziano*, 368 Mass. 325, 329-330 (1975). Most of the cases on admissibility of evidence of other crimes involve evidence proffered by the prosecution to establish the guilt of the defendant. Nevertheless, it is well established that a defendant should "have the right to show that crimes of a similar nature have been committed by some other person when the acts of such other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of defendant as the person who committed the crime." *State* v. *Bock*, 229 Minn. 449, 458 (1949). See generally *Commonwealth* v. *Abbott*, 130 Mass. 472 (1881); W. B. Leach & P. J. Liacos, Massachusetts Evidence 302-303 (4th ed. 1967). In such circumstances, where the defendant offers such evidence, "it is also the rule that where the proffered evidence is of substantial probative value, and will not tend to prejudice or confuse, all doubt should be resolved in favor of admissibility." *Holt* v. *United States*, 342 F.2d 163, 166 (5th Cir. 1965). Cf. Fed. R. Evid. 404(b) (28 U.S.C. app. [1976]).

Here, there are substantial connecting links between the offense charged and the subsequent crime. Both offenses involved a crime of the same type, committed by similar methods in the same vicinity of Boston, by three males of similar description. In addition, similar weapons were used, not just in the generic sense, but in terms of specific characteristics: what appeared to be a square-barrelled pistol and a sawed-off shotgun concealed by a paper bag. We recognize that some of the similarities recited may be common to many robberies committed in

Boston, and that there is some discrepancy in the reported physical description of the suspects involved in the two offenses. However, the alleged participation of Linnell Young (for whom a warrant had issued for participation in the same crime for which the defendant stood indicted) in both robberies is distinctive, and when coupled with the other common factors forms a possible link between the two robberies.[2] See *People* v. *Haston*, 69 Cal. 2d 233, 249-250 (1968). The defendant's offer therefore tends to show that three days after they robbed the Merit Gas Station, Linnell Young and two other men robbed Pete's Market. Because the defendant was not a participant in the second robbery, the evidence is probative on whether he participated in the first robbery, the issue at trial. Therefore, the defendant should have been permitted to introduce this evidence.[3] See *Commonwealth* v. *Murphy*, 282 Mass. 593 (1933). Cf. *Holt* v. *United States*, 342 F.2d 163 (5th Cir. 1965); *State* v. *Bock*, 229 Minn. 449 (1949). The exclusion of such evidence was error, and, in light of the other evidence, we cannot say it was not prejudicial.

2. *Declaration Against Interest.*

Although our decision on the first assignment of error requires reversal of the judgment of conviction and a new trial, we discuss the second assignment to the extent the issue is likely to recur at the new trial.

The defendant also offered to prove through the testimony of a James Talbot that Linnell Young, while detained in Charles Street jail on the Pete's Market charge,

---

[2] It seems to us also that, while not crucial to the defendant's argument, it is not without relevance that the identification of Young as a participant in the robbery for which the defendant was charged came from the same (and only) victim (McCarter) who identified the defendant.

[3] Our decision is unaffected by the fact that the offered evidence is capable of an interpretation consistent with the defendant's guilt. The point is that the defendant was entitled to have the jury make the decision as to the significance of this evidence in the context of the other evidence in the case. See *Commonwealth* v. *Murphy*, 282 Mass. 593, 597 (1933).

"made an extra-judicial statement . . . admitting to Mr. Talbot that he had been involved in the Merit Gas Station armed robbery with two other people, neither of which was Stephen Keizer." Young was released when the charges against him were dropped for want of prosecution. After McCarter identified him as the second robber in the Merit Gas Station robbery, a warrant issued for his arrest for that crime. At the time of Keizer's trial, Young was a fugitive.

The defendant maintained at trial that Young's statement constituted a declaration against penal interest, and hence was admissible as an exception to the hearsay rule recognized in a growing number of jurisdictions. Cf. Fed. R. Evid. 804(b)(3). The judge, however, chose to follow Massachusetts law as it then stood and excluded the evidence as inadmissible hearsay.[4] After Keizer's trial, we decided *Commonwealth* v. *Carr*, 373 Mass. 617 (1977), in which we held admissible declarations against penal interest when accompanied by indicia of reliability.[5]

The prosecution argues that *Carr* should be applied prospectively only. The defendant excepted to the judge's exclusion of Linnell Young's statement, made a sufficient offer of proof, and now on direct appeal claims the benefit of the new rule.[6]

We need not decide any of the issues argued as to retroactive or prospective application as it suffices to hold that *Carr* will apply to the new trial we require. One point

---

[4] Typically described, hearsay is an extrajudicial statement offered to prove the truth of the matter asserted. See, e.g., Fed. R. Evid. 801 (c); W. B. Leach & P. J. Liacos, Massachusetts Evidence 183 (4th ed. 1967). The defendant also argued below, as well as here, that exclusion of Young's declaration denied him his due process right to present a defense. See *Chambers* v. *Mississippi*, 410 U.S. 284 (1973). In light of our decision, we need not reach this issue.

[5] *Commonwealth* v. *Carr*, 373 Mass. 617 (1977), was decided on November 9, 1977. The defendant was tried in May, 1976.

[6] See *Commonwealth* v. *Malone*, 376 Mass. 931 (1978), decided after argument of the instant case.

only needs comment here; for purposes of this discussion we shall assume that the prerequisites of admissibility laid down in *Carr* will be established at a new trial. In that context, we assume that the prosecution will continue to maintain that the declaration does not meet a criterion of admissibility set forth in *Carr* because the exculpatory portion of the declaration does not disserve Young.[7] Although we recognize the fact that exculpating Keizer was not against Young's interest inasmuch as both might have participated in the gas station robbery, we nonetheless conclude that the declaration satisfies the standards of *Carr* and Fed. R. Evid. 804(b)(3)[8] on which *Carr* relies. First, the language of 804(b)(3) is not so narrow as to preclude all declarations but direct admission of guilt. See *United States* v. *Thomas*, 571 F.2d 285, 288 (5th Cir. 1978); *United States* v. *Barrett*, 539 F.2d 244, 251 (1st Cir. 1976). See generally Note, Declarations Against Penal Interest: Standards of Admissibility under an Emerging Majority Rule, 56 B.U.L. Rev. 148, 158 (1976). Second, recent cases applying rule 804(b)(3) have tended to hold that declarations similar to the one offered here are admissible. See *United States* v. *Thomas*, *supra* at 288-289 (declarant-codefendant said, "[T]hey ought to let Rowland Thomas go, he didn't have anything to do with it"); *United States* v. *Barrett*, *supra* at 252-253 (after im-

---

[7] According to the defendant's offer of proof, Young said that "he had been involved in the Merit Gas Station armed robbery with two other people, *neither of which was Stephen Keizer.*" It is the portion which we have italicized which is in dispute on this point.

[8] Rule 804(b)(3) provides: "(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . (3) Statement against interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." 28 U.S.C. app. (1976).

plicating himself, deceased declarant said "Bucky [the accused] wasn't involved. It was Buzzy"); *United States* v. *Goodlow*, 500 F.2d 954, 956 (8th Cir. 1974) (declarant, who did not respond to a subpoena, said he was "good for the crime" and the defendant was not "good for it"). But see *United States* v. *Marquez*, 462 F.2d 893, 895 (2d Cir. 1972) (decided before adoption of Fed. R. Evid. 804[b][3]); *United States* v. *Seyfried*, 435 F.2d 696 (7th Cir. 1970), cert. denied, 402 U.S. 912 (1971) (same). For a broad formulation of the declaration against interest exception generally, see 5 J. Wigmore, Evidence § 1465 (Chadbourn rev. 1974) ("every fact contained in the same statement" should be admissible). Third, as noted in *United States* v. *Barrett*, *supra* at 252, the exculpatory portion of the declaration, when considered in context, is disserving to Young since it "strengthen[s] the impression that he had an insider's knowledge of the crimes."

Nor is this statement less disserving for the reason the prosecution suggests, namely, that because the declaration was made to a fellow prisoner, it represented no more than an empty boast which was never meant to reach the ears of the authorities. See *United States* v. *Bagley*, 537 F.2d 162, 165 (5th Cir. 1976), cert. denied, 429 U.S. 1075 (1977).

We need go no further on this record. Our decision not to reach the other issues as to the prerequisites of admissibility of this extrajudicial statement stems from recognition that the nature of the evidence to be offered at the new trial may vary, including the possibility that the fugitive declarant may no longer be "unavailable" at such time.

*Judgment reversed.*

*Verdict set aside.*