COMMONWEALTH vs. STEFON WALKER.

Suffolk. June 8, 1982. — October 21, 1982.

Present: BROWN, ROSE, & GREANEY, JJ.

*Practice, Criminal*, Loss of evidence by prosecution. *Identification. Evidence*, Exculpatory. *Due Process of Law*, Loss of evidence by prosecution.

The defendant in a criminal case was not denied due process of law as a result of the prosecutor's failure to produce, at the defendant's request, certain beer cans taken by the police from the scene of the crime for fingerprint analysis and lost through the negligence of the police before the analysis was made, where the absence of the defendant's fingerprints on the cans would not have proved his innocence and where the defendant's conviction was based on his identification by the two victims rather than on circumstantial evidence. [546-549]

The prosecution in a criminal case was not required to produce a photograph chosen by the victims from a group of photographs shown to them by police where testimony at the trial supported the conclusion that the victims did not claim that the photograph was that of one of their assailants but claimed only that it resembled one of them, and where there was no allegation that the person in the photograph did not resemble the defendant or that the group of photographs had contained a photograph of the defendant which the victims failed to identify. [549-550]

There was no merit to claims by the defendant in a criminal case that certain pretrial identifications of him made by the victims were unnecessarily suggestive and that the suggestive identification of another individual prejudiced the defendant. [550-552]

At a criminal trial there was no error in the exclusion of evidence of certain other crimes committed while the defendant was in custody which the defendant claimed were so similar to the ones for which he was indicted as to cast doubt on identifications of him. [552]

INDICTMENTS found and returned in the Superior Court Department on March 6, 1981.

Motions to dismiss were heard by *Donahue,* J.  A motion to suppress evidence was heard by *Linscott,* J., and the cases were tried before him.

*John J. Bonistalli* for the defendant.

*John D. Boyle,* Assistant District Attorney, for the Commonwealth.

ROSE, J.  The defendant appeals from his convictions by a jury on two indictments for rape.  He claims that he was denied a fair trial because (1) the Commonwealth lost evidence that may have been favorable to him, (2) the identification of him by the victims was unduly suggestive, and (3) the trial judge excluded evidence of crimes committed by someone else which were arguably similar in nature to those for which he was indicted.

In his brief the defendant also argued that he should have been found not guilty of the rape of one of the victims, but in oral argument he admitted that he could have been found guilty of that rape as a joint venturer.

The two female victims, Claire and Joette, ages sixteen and fifteen respectively, met the defendant and one Emett Perry (the codefendant) on the Boston Common and went with the men to a housing project to obtain drugs.  On the way to the project the defendant purchased cans of beer, and the four were joined by a third male who bought and drank a bottle of beer.  On a landing in the project the three men forced the two girls to submit to vaginal and oral sex. After hospital examination, the victims were taken to a police station in Boston and shown numerous photographs. Although the testimony was not without some ambiguity, the victims testified that they were unable to identify any of their assailants in the photographs but picked out photographs that they thought resembled the defendant.  The evening of the day of the rapes the police went to the scene of the crimes and retrieved four beer cans and a beer bottle. The beer containers were left that night in the unattended crime laboratory for fingerprint analysis.

The next day the police arranged to have the victims walk through the Boston Common to look for their assailants. Claire

identified the defendant and told Joette to "look to the right." Joette looked towards a bench where the defendant sat. Joette identified the codefendant on the same bench and gave a prearranged signal to the police. She then recognized the defendant. As the police came to arrest the defendant and the codefendant, Claire identified the codefendant.

Prior to trial, defense counsel asked for production of the beer containers taken by the police from the scene of the crime. The police could not locate the cans. There was no evidence to indicate that a fingerprint analysis had been made. Defense counsel also asked for the photographs which the victims had said resembled the defendant. These photographs had been returned to the police department's "mug book" and could not be identified. Defense counsel did not ask for access to the mug book.

At the trial, defense counsel sought to introduce evidence of three other crimes committed while the defendant was in custody. The trial judge excluded the evidence of one crime based on hearsay testimony and excluded the evidence of the other two as insufficiently connected in time and method of operation.

1. *Lost Evidence.*

It is a requirement of due process that the prosecution must, when appropriately requested, give defense counsel or the court any exculpatory evidence in its possession. *Brady* v. *Maryland,* 373 U.S. 83 (1963). *United States* v. *Agurs,* 427 U.S. 97 (1976). *Commonwealth* v. *Ellison,* 376 Mass. 1 (1978). *Commonwealth* v. *Collins,* 386 Mass. 1 (1982). Failure to present such evidence when it is appropriately requested, and when it is material to guilt or punishment, amounts to suppression of exculpatory evidence in violation of the rule in *Brady, supra* at 87. However, loss of evidence is not always equated with suppression. "[T]he Supreme Court differentiates between the suppression of evidence on the one hand and its loss on the other. The Court apparently does not consider evidence to have been suppressed in the *Brady* sense if the government satisfactorily explains why it is unable to produce the evidence." *United*

*States* v. *Arra,* 630 F.2d 836, 848 (1st Cir. 1980). See *United States* v. *Esposito,* 523 F.2d 242, 248-249 (7th Cir. 1975), cert. denied, 425 U.S. 916 (1976).

Although the *Brady* rule does not apply directly to a satisfactorily explained loss of evidence by the prosecution, other rules may apply. Many jurisdictions follow *United States* v. *Bryant,* 439 F.2d 642, appeal after remand, 448 F.2d 1182 (D.C. Cir. 1971), in applying a "pragmatic balancing" test, 448 F.2d at 1184. See, e.g., *United States* v. *Picariello,* 568 F.2d 222 (1st Cir. 1978); *United States* v. *Loud Hawk,* 628 F.2d 1139 (9th Cir. 1979), cert. denied, 445 U.S. 917 (1980); *United States* v. *Wilks,* 629 F.2d 669 (10th Cir. 1980); *United States* v. *Arra, supra*; *United States* v. *Grammatikos,* 633 F.2d 1013 (2d Cir. 1980); *People* v. *Hitch,* 12 Cal. 3d 641 (1974); *State* v. *Wright,* 87 Wash. 2d 783 (1976). To some extent, the prosecution's duty to preserve evidence that is material and potentially exculpatory must follow from its duty to present such evidence upon appropriate request to defense counsel. As stated in *United States* v. *Bryant,* 439 F.2d at 651, "the duty of disclosure attaches in some form once the government has first gathered and taken possession of the evidence in question. Otherwise, disclosure might be avoided by destroying vital evidence before prosecution begins or before defendants hear of its existence. Hence we hold that before a request for discovery has been made, the duty of disclosure is operative as a duty of preservation." Also see *People* v. *Hitch, supra* at 650, and *State* v. *Wright, supra* at 789-791.

An underlying purpose of this duty is "to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the Government." *United States* v. *Bryant,* 439 F.2d at 648. *State* v. *Wright, supra* at 788.

When exculpatory evidence is suppressed, the good or bad faith of the prosecution is not relevant. *Brady, supra* at 87. When potentially exculpatory evidence is lost or destroyed, the culpability of the government will be weighed along with the materiality of the evidence and the potential

prejudice to the defendant. *United States* v. *Bryant*, 439 F.2d at 653. *Picariello*, 568 F.2d at 227. *Wilks*, 629 F.2d at 674. *Arra*, 630 F.2d at 849. *Grammatikos*, 633 F.2d at 1019-1020. See *People* v. *Hitch*, 12 Cal. 3d at 652-655, and *State* v. *Wright*, 87 Wash. 2d at 792.

Here, in losing the beer containers, the police were negligent. There is, however, no evidence of intentional or bad faith destruction of evidence which may have been favorable to the accused. Since no fingerprint analysis had been made, the police could not have known whether the defendant's fingerprints were on any of the containers. Whether the conviction should be reversed, therefore, depends on the remaining two factors to be weighed: the materiality of the lost evidence and the potential for prejudice to the defendant.

In a case similar to the one here, *United States* v. *Wilks, supra*, the government negligently but without bad faith lost a lemonade can containing narcotics purportedly belonging to the defendant. The defendant claimed that the lack of his fingerprints on the can was the only piece of evidence which would have shown his innocence. The court found that "[e]vidence of fingerprints or the lack thereof on the lemonade can is clearly material in the ordinary legal sense." 629 F.2d at 674. The remaining question then was to what extent that loss of material evidence prejudiced the defendant. On the facts of that case, "[t]he absence of Wilks' fingerprints on the can, if shown, would not prove his innocence . . . ," (629 F.2d at 674) though the absence could have given greater weight to the testimony of another witness who stated that he put the narcotics in the can without the defendant's knowledge. Since there were independent grounds for discrediting that testimony, the court concluded that "insufficient prejudice was demonstrated to constitute reversible error." *Id.* at 675.

The relevant facts of the case here are quite similar to those in *Wilks* and support a similar conclusion. The absence of the defendant's fingerprints on the cans would not have proved his innocence, especially in view of the fact that any fingerprints may have been destroyed by the han-

dling of others during the several hours which elapsed between the time the defendant purportedly handled one of the cans and the time the police retrieved what appeared to be the same cans. The defendant's conviction was not based on circumstantial evidence but was based on his identification by the two victims. Any prejudice to the defendant which might have resulted from the loss of the cans was too insubstantial and uncertain to warrant reversal. See *United States* v. *Arra, supra.*

2. *The Photographs.*

The defendant argues that the victims picked out a photograph which they incorrectly identified as one of their assailants. The prosecution failed to produce the photograph when requested. The photograph was not lost or destroyed but was returned to the "mug books" and not identified. The defendant did not ask to see the mug books but claims error in the failure of the prosecution to produce the particular photograph selected by the victims.

The testimony adduced at trial supported the conclusion that the victims did not claim that the photograph was that of one of their assailants but claimed only that it resembled one of them.[1] A photograph claimed only to resemble the defendant would have no probative value unless it bore no resemblance to the defendant. "The *Brady* obligation comprehends evidence which provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness." *Commonwealth* v. *Ellison,* 376 Mass. 1,

---

[1] A lack of clarity in the testimony of one of the victims would permit an inference that one or both victims had originally claimed that a photograph in the mug book was that of one of the defendants. See footnote 3, *infra.* Although a misidentification of a photograph would have some probative value, the courts of this Commonwealth have not required photographs selected by a witness or victim believing them to be those of a defendant to be segregated for later production at trial when there is no allegation that the photographic identification was impermissibly suggestive. *Commonwealth* v. *Brown,* 376 Mass. 156, 162-164 (1978). *Commonwealth* v. *Clark,* 378 Mass. 392, 402 (1979).

22 (1978). There was testimony that the person in the photograph at issue did resemble the defendant in that both were black men with straight hair. There was no allegation that the person in the photograph did not resemble the defendant. There was no allegation that the mug books contained the defendant's picture which the victims failed to identify.[2] Consequently, the prosecution was not required to produce the photograph in question.

3. *The Identifications.*

The defendant contends that the identifications of him by the victims were unnecessarily suggestive and that the suggestive identification of the codefendant prejudiced the defendant. The defendant does not allege that the procedure used in the police station for photographic identification was suggestive but argues that the joint selection by the victims of the same photographs revealed their desire to establish a united front and their proclivity to find a black male with straight hair.[3]

The identifications of the defendant occurred on the Boston Common in the afternoon the day after the crimes. The police did not walk with the victims or direct their attention to any particular spot. Thus, Claire's identification was the result of a field confrontation uninfluenced by the police and without suggestiveness of any kind. *Commonwealth* v. *Mattias,* 8 Mass. App. Ct. 786, 788 (1979). See *Commonwealth* v. *Bumpus,* 354 Mass. 494, 501 (1968), cert. denied,

---

[2] "Where a witness identifies a defendant during a pretrial photographic identification procedure after the witness has been unable to make an identification from another group of photographs, the defendant is entitled to know whether the defendant's photograph actually appeared in both sets of photographs." *Commonwealth* v. *Clark,* 378 Mass. at 403.

[3] The defendant also alleges that the victims identified someone else in selecting photographs at the police station. Testimony was inconclusive whether they had picked a photograph they believed to be of the rapist or only one they believed resembled the rapist. The inconclusive testimony could be weighed by a jury. See *Commonwealth* v. *Cincotta,* 379 Mass. 391, 397 (1979) ("[I]t was for the jury to decide how much weight to attach to these identifications, as well as to the others, when they were admitted at trial").

393 U.S. 1034 (1969) (one-on-one confrontation permissible immediately after a crime). See *Commonwealth* v. *Chase*, 372 Mass. 736, 741-745 (1977) (no unnecessary suggestiveness where the witness was taken to a lounge by the police, and the witness identified the bartender as the murderer after having identified him from photographs).

Although the identification by Joette could have been influenced by Claire when Claire said "look to the right," this is not a case of a joint identification in circumstances arranged by the police several weeks or months after the crime. See *Commonwealth* v. *Moynihan*, 376 Mass. 468, 474-477 (1978) (no impermissible suggestiveness where one witness ratified the selection by another witness of the defendant's photograph from an array selected by a police officer, since both witnesses saw the robbers under favorable conditions and only a short time had elapsed since the crime). Cf. *Commonwealth* v. *Marks*, 12 Mass. App. Ct. 511, 514-516 (1981) (suppression hearing must be held at new trial to determine whether a daughter's courtroom identification had been unduly influenced by her mother). Joette's identification was sufficiently spontaneous and separate from Claire's to be an independent field identification involving no unnecessary suggestiveness. *Commonwealth* v. *Mattias, supra* at 788 (ratification of first witness's identification by second witness two days after the crime not suggestive where the two witnesses rode in a police car and saw the defendant on the street). The identifications by both Claire and Joette met all tests of reliability. *Neil* v. *Biggers*, 409 U.S. 188, 199-200 (1972).

Although the codefendant's identification by Claire was heard by the jury,[4] the trial judge told the jury immediately after this testimony not to concern themselves with the codefendant. Since the defendant had been reliably identified by Claire and Joette, any prejudice to the defendant

---

[4] Claire's identification of the codefendant was ruled inadmissible as unnecessarily suggestive by the judge in the separate trial of the codefendant.

which might have resulted from guilt by association with the codefendant would have been negligible at most.

4. *Evidence of Other Crimes.*

The defendant argues that other crimes committed while he was in custody were so similar to the ones for which the defendant was indicted that evidence of them should have been admitted as indicating that another person committed these crimes. The defendant is entitled to introduce evidence of other crimes so similar in point of time and method of operation to the ones for which he was indicted as to cast doubt upon his identification. *Commonwealth* v. *Murphy*, 282 Mass. 593, 597-598 (1933). *Commonwealth* v. *Keizer*, 377 Mass. 264, 267 (1979).

There were three crimes, evidence of which the defendant sought to introduce, involving victims named Elizabeth, Marlene and Karen. Elizabeth's descriptions of her assailants at the voir dire hearing did not match the defendant. When she was asked whether the defendant was her assailant, she did not mistakenly identify the defendant as one of her assailants or indicate that the defendant looked like any of them. Hence her testimony did not suggest the likelihood that the defendant had been incorrectly identified and mistaken for someone of a similar appearance.

Although Marlene was not sure if the defendant was her assailant, thus suggesting that her assailant looked like the defendant, her assailant assaulted her in an attempt to rob her. The defendant was convicted of rape but not of robbery. Other than the fact that she was assaulted in the same housing project, there was no similarity between her assault and the rapes of which the defendant was convicted.

The evidence concerning Karen was offered through the testimony of a police officer who spoke with her. This testimony was excluded as hearsay. See *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 316-317 (1973). The defendant does not argue that the exclusion of this testimony on that ground was erroneous.

*Judgments affirmed.*