Commonwealth vs. Bruce Jewett.

Middlesex.    May 17, 1983. — January 9, 1984.

Present: Hale, C.J., Rose, & Brown, JJ.

*Rape. Identification. Evidence,* Exculpatory, Scientific test, Nonexist-
ence of evidence. *Practice, Criminal,* View.

The judge at a rape trial erred in excluding evidence that a victim of
another sexual assault, committed five days before the rape for which
the defendant was indicted, had misidentified the defendant as her
. assailant from the same photographs from which the complainant in
the present case had identified him. [356-359]
There was no merit to the claim by a defendant in a rape case that he was
deprived of a fair trial because the Commonwealth failed to preserve
certain semen-stained garments by freezing them for a particular en-
zyme analysis test where the defendant failed to show that such inac-
tion was the cause of the test's failure to detect enzyme activity and
where, in the circumstances, the Commonwealth had no duty to pre-
serve the evidence by taking such extraordinary measures. [359-360]
In the circumstances, a judge at the trial of a rape case did not err in pre-
cluding defense counsel from commenting in final argument to the
jury on the Commonwealth's failure to conduct a particular enzyme
analysis test on certain semen samples it had collected. [360-361]

Indictment found and returned in the Superior Court
Department on February 11, 1980.

The case was tried before *James P. Donohue,* J.

*Margaret H. Van Deusen* for the defendant.

*Ellen L. Bane,* Assistant District Attorney, for the Com-
monwealth.

Rose, J.    The defendant was convicted of rape.  He ap-
peals from his conviction and from the denial of his motion
for a new trial, contending:  (1) that the exclusion of prior
misidentification evidence, tending to cast doubt on his
identity as the complainant's assailant, denied him a fair

trial; (2) that the Commonwealth's failure to preserve semen samples for "PGM" analysis denied him a fair trial; (3) that the trial judge's refusal to allow defense counsel to comment to the jury on the Commonwealth's failure to conduct "ABO" analysis on the semen samples collected denied him a fair trial; and (4) that the trial judge's refusal of the jury's request for a view was an abuse of discretion entitling him to a new trial. We reverse.

The Commonwealth's case was based upon the complainant's testimony, which tended to show the following. The crime took place in Newton, on the evening of October 31, 1979, Halloween. While searching for a pet on a path running down a wooded slope behind her home, the complainant, then a teenaged girl, was grabbed from behind, dragged from the path, thrown to the ground and raped. When startled by a rustling sound, the assailant fled on foot. The entire episode transpired in fewer than five minutes.

The path running down the wooded slope behind the complainant's home is a "short cut" to a train station. Several buildings with outdoor floodlights are near the base of the slope. Extensive and conflicting evidence was adduced with respect to the complainant's opportunity to view her assailant, focused particularly on the lighting conditions on the slope. The complainant positively identified the defendant at trial.

The defense was mistaken identity. The defendant presented evidence that at the time of the crime he and a companion were either at or en route to a train station several miles from the complainant's home, to await the arrival of their girlfriends. The companion, the defendant's girlfriend (wife, at the time of trial), and four members of his girlfriend's family testified on his behalf. The Commonwealth emphasized the fact that the defendant's asserted trip to the train station had included a stop at a restaurant within one mile of the complainant's home.

After prolonged deliberations, during which the trial judge delivered the *Rodriquez* charge,[1] the jury returned a verdict of guilty.

1. During a bench conference at trial, defense counsel represented to the trial judge that the victim of a sexual assault which had occurred on October 26, 1979, five days before the alleged crime, had identified the defendant as her assailant from the same photographs that were shown to the complainant; that the defendant was charged with the October 26th assault; and that the charge was dismissed when the Commonwealth was shown that the defendant had been "locked up" at M.C.I., Bridgewater, on October 26th.[2] Defense counsel offered to call the victim as a witness and to introduce the dismissed complaint in evidence. The judge excluded the evidence without permitting defense counsel to explain its purpose and informed defense counsel that his exception was noted.[3]

---

[1] *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 98, 101 (1973) (instruction which may be given jury when "because of the lapse of time or otherwise, the judge apprehends that the jury is deadlocked").

[2] The defendant has drawn our attention to a second instance in which he was identified as the assailant in a similar sexual assault which occurred in the same area and the same time period as the alleged crime and was acquitted of the charge when it was proved he could not have been the assailant. Because the defendant did not raise the second instance before the trial judge, we do not consider it.

[3] Thus, whether the defendant intended to use further evidence to prove the misidentification, or its similarity to the crime alleged, is unclear from the record. Defense counsel was not required to make a futile offer of proof "in the face of the judge's unequivocal adverse ruling." See *Commonwealth* v. *Graziano,* 368 Mass. 325, 330 (1975). Compare *Commonwealth* v. *Sheffield,* 16 Mass. App. Ct. 342, 346-347 (1983) (no error to exclude photo of third person who resembled composite of rapist where defendant failed to show that third person could have committed the crimes and failed to take advantage of trial judge's invitation to conduct voir dire on relevance of third person's photograph). We note, however, that with his motion for a new trial, denied by the trial judge without a hearing, the defendant presented further information on the October 26th assault, including: that the victim was a teenaged girl; that the victim was attacked while walking to school along a "short cut" path; that she was grabbed from behind and thrown to the ground; and that the assailant fled on foot when startled by a group of children who appeared on the path.

The defendant contends that the exclusion of the proffered evidence was error entitling him to a new trial. See *Commonwealth* v. *Murphy*, 282 Mass. 593 (1933); *Commonwealth* v. *Keizer*, 377 Mass. 264 (1979). The misidentification evidence, the defendant contends, would have indicated that a man who resembles the defendant, but who could not have been he, had recently committed a similar sexual assault, thus creating doubt whether it was the defendant who had assaulted the complainant. See *Commonwealth* v. *Murphy*, *supra* at 597.

The Commonwealth does not question the accuracy of the offer relating to the October 26th incident.

We conclude that the exclusion of the evidence of the prior misidentification was error entitling the defendant to a new trial. ". . . [I]t is well established that a defendant should 'have the right to show that crimes of a similar nature have been committed by some other person when the acts of such other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of the defendant as the person who committed the crime.'" *Commonwealth* v. *Keizer*, 377 Mass. at 267, quoting from *State* v. *Bock*, 229 Minn. 449, 458 (1949). *Commonwealth* v. *Murphy*, 282 Mass. at 597-598. *Commonwealth* v. *Graziano*, 368 Mass. 325, 329-330 (1975). See *Commonwealth* v. *Walker*, 14 Mass. App. Ct. 544, 552 (1982). However, "[t]he evidence should not be too remote in time or too weak in probative quality, and it should be closely related to the facts of the case against the defendant." *Commonwealth* v. *Graziano*, *supra* at 329-330. *Commonwealth* v. *Nicholas*, 15 Mass. App. Ct. 354, 356 (1983). When the defendant offers such evidence, and it is "of substantial probative value, and will not tend to prejudice or confuse, all doubt should be resolved in favor of admissibility." *Commonwealth* v. *Keizer*, *supra* at 267, quoting from *Holt* v. *United States*, 342 F.2d 163, 166 (5th Cir. 1965). Cf. *Pettijohn* v. *Hall*, 599 F.2d 476, 481 (1st Cir. 1979). Although the decision whether to admit evidence of other crimes ordinarily rests within the trial

judge's discretion, "that decision is not absolute and may be set aside if justice requires a different result." *Commonwealth* v. *Keizer, supra* at 267. *Commonwealth* v. *Murphy, supra* at 597-598.

Sufficient similarity exists between the two incidents to render the evidence that the defendant had been identified as the assailant in the prior sexual assault, but could not have been the assailant, probative on the question whether the defendant was the assailant in the rape. We view as dispositive, when taken together: the similar nature of the two incidents; the closeness of the incidents in time and place, and the identifications of the defendant made by both victims from the same photograph.[4] The evidence went "beyond a mere showing that [the defendant] had . . . previously been charged with similar crimes and that the charges had been dismissed. It tended to show, or at least was sufficient to permit the jury to draw an inference, that the [defendant] had been the victim of mistaken identity . . . ." *Holt* v. *United States,* 342 F.2d at 166. Compare *Commonwealth* v. *Walker,* 14 Mass. App. Ct. at 552; *United States* v. *Hallman,* 439 F.2d 603, 605 (D.C. Cir. 1971). The defendant need not produce the true assailant. It is enough that he shows that he was mistakenly identified as the assailant. See *Holt* v. *United States,* 342 F.2d at 166. The possibility that inferences consistent with the defendant's guilt could be drawn from the prior misidentification evidence does not militate against admission of the evidence. Credibility, weight, and reasonable inferences are for the jury. See *Commonwealth* v. *Murphy,* 282 Mass. at 597; *Commonwealth* v. *Keizer,* 377 Mass. at 268 n.3.

---

[4] We do not decide whether evidence of the prior assault could have been properly admitted *against* the defendant. See *Commonwealth* v. *Madyun, post* 965 (1983). However, we note that, when offering such evidence in his own defense, the defendant should not be required to demonstrate the same degree of similarity which the Commonwealth must demonstrate when seeking to introduce such evidence to establish the defendant's guilt. See *Perry* v. *Watts,* 520 F. Supp. 550, 560 (N.D. Cal. 1981); *State* v. *Garfole,* 76 N.J. 445, 451-453 (1978).

The defendant was entitled to have the prior misidentification evidence considered by the jury. Cf. *Commonwealth* v. *Murphy, supra* at 599-600; *Commonwealth* v. *Graziano,* 368 Mass. at 330. It was error to exclude it. Because the case was a close one, we cannot conclude that the erroneous exclusion of the evidence of the prior misidentification was harmless. Accordingly, the defendant is entitled to a new trial.

2. Because they are likely to become issues on retrial, we briefly discuss the defendant's second and third contentions. The defendant requested that semen samples and stains collected by the Commonwealth be made available to him for ABO and PGM testing in May, 1981, eight months after his conviction.[5] The evidence in question then was made available to the defendant for testing and the defendant's motion for extra fees and costs for the testing was allowed. See G. L. c. 261, § 27B. The defendant's expert reported the results of ABO and PGM analyses conducted on the semen stains on December 11, 1981. ABO analysis did not exclude the defendant.[6] PGM analysis was unsuccessful since "no

---

[5] The PGM test is a relatively new method of semen analysis which involves detection and identification of the enzyme PGM (phosphoglucomutase). See Blake & Sensabaugh, Genetic Markers in Human Semen II: Quantitation of Polymorphic Proteins 23 J. Forensic Sci. 717, 726-728 (1978); Blake & Sensabaugh, Genetic Markers in Human Semen: A Review, 21 J. Forensic Sci. 784, 787-793 (1976). See generally Rees & Rothwell, The Identification of Phosphoglucomutase Isoenzymes in Semen Stains and its Use in Forensic Casework Investigation, 15 Med. Sci. & L. 284 (1975). The more commonly used ABO test determines the semen donor's blood type through identification of antigens present in semen. See Blake & Sensabaugh, Genetic Markers in Human Semen: A Review, *supra* at 784-787. Many appellate courts have held the results of ABO analysis admissible. See, e.g., *State* v. *Gray,* 292 N.C. 270, 283-284 (1977); *People* v. *Johnson,* 37 Ill. App.3d 328, 332 (1976). The trial judge found that at the time of the defendant's motion for extra fees and costs, May, 1981, only two laboratories in the nation (in California and Washington, D.C.) had capability for conducting PGM analysis. A few appellate courts have recognized the PGM test. See *People* v. *Nation,* 26 Cal. 3d 169, 177 & n.2 (1980).

[6] ABO analysis indicated that the semen donor was either a man with type O blood or a man whose blood type is undeterminable because he is a

PGM activity was observed." In his report, the defendant's expert observed that "[i]t is possible that if the [PGM] testing had been attempted earlier or if the stains [had been] preserved by freezing, then results would have been obtained." The defendant now contends that he was deprived of a fair trial because the Commonwealth failed to preserve the semen stains for PGM testing. .

Assuming without deciding that the results of a successful PGM analysis would have been admissible at trial, the defendant's contention is without merit. The defendant has failed to show that any action or inaction by the Commonwealth was the principal cause or even a likely cause of the failure of the PGM analysis. Cf. *People* v. *Wilson*, 128 Cal. App. 3d 132, 134-135 (1982) (defendant's assertion that enzyme analysis of semen sample would have been successful was too conjectural to support ineffective assistance of counsel claim based on defense counsel's failure to request enzyme analysis). Moreover, in the absence of any request by the defendant that extraordinary measures be taken to preserve evidence or of any showing that the Commonwealth should have known that possibly exculpatory evidence would be lost unless such measures were taken, we are unable to conclude that the Commonwealth had a duty to preserve this evidence by taking the extraordinary measure of freezing the stained garments. Compare *Commonwealth* v. *Walker*, 14 Mass. App. Ct. at 546-549.

3. At trial, the doctor who had examined the complainant after the alleged crime, a witness for the Commonwealth, gave the only testimony received with respect to ABO analysis. The doctor indicated that he was aware that such tests are sometimes done; that the hospital where he treated the complainant did not have the capability for conducting such tests; and that he did not believe that the semen samples he had collected would have been suitable for such tests. The trial judge precluded defense counsel

"non-secretor" (a person who does not secrete significant levels of blood antigens in other body fluids). The defendant is a "non-secretor" with type A blood.

from commenting in final argument on the Commonwealth's failure to conduct ABO testing. In these circumstances, there was no error. Cf. *Commonwealth* v. *Jimenez,* 10 Mass. App. Ct. 441, 444-445 (1980). Cases cited by the defendant dealing with deprivation of a defendant's right to cross-examine a witness on the inadequacies of tests conducted or the failure to conduct various tests (e.g., *Commonwealth* v. *Benoit,* 382 Mass. 210, 220-221 [1981]) are inapposite.

4. There is no need to discuss the defendant's fourth contention, as it is unlikely to become an issue on retrial. However, we note that the decision whether to allow a view ordinarily rests within the trial judge's sound discretion regardless of who requests the view. See, *e.g., Commonwealth* v. *Curry,* 368 Mass. 195, 198 (1975). Moreover, in this case, the trial judge "might well have thought that a view would be of no aid to the jury, or that potential differences in lighting conditions would render a view misleading." *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 307 (1979).

> *Judgment reversed.*
> *Verdict set aside.*