Fremont-Smith, J.
On April 29, 1996, at approximately 6:00 p.m., Boston police detectives had an apartment at 219 South Street, in the Mattapan area of Boston, under surveillance for suspected drug activity. Two individuals were seen to exit the apartment. The detectives followed and questioned the individuals at the Ashmont MBTA station. One of them voluntarily handed over six bags of heroin and stated she had obtained it at the apartment in question. The detectives returned for further surveillance of the apartment, and witnessed an automobile in which the two defendants were occupants, arrive and park nearby. They entered the building and then, after a couple of minutes, exited and drove away. The blinds on the window of the apartment in question were seen to be opened and closed as defendants exited and drove off. As the detectives followed in their unmarked cruiser, the car speeded up and proceeded through two red traffic signals at two intersections. The officers then pulled the car over as a result of the motor vehicle violations as well as their suspicion that the occupants were engaged in drug activity. When asked where they had been, the occupants denied having been at the building or apartment under surveillance. The driver (Flores) produced a valid license. During the time the officers talked to the occupants, one of the officers observed two beepers on Cabral and saw a wire sticking out of the floor of the vehicle, which caused him to suspect (based upon his training and experience) that the car might contain an electronically controlled hidden compartment for drugs (a “hide”). The officers then told the occupants to get out of the vehicle and summoned backup assistance. When a marked cruiser arrived shortly, the occupants were directed to sit in the marked police cruiser to get out of the pouring rain. One of the detectives then noticed a button on the dashboard of the stopped car, to which the previously-noticed wire was connected. Following the wire, he ascertained that it led to the back of the front passenger seat. When he frisked the seat and felt a hard area, he concluded there was probably a wood or metal compartment inside the seat. Pushing back the cushion of the seat, he then observed a hidden compartment in which there were 671 bags of heroin and $1,180 in U.S. currency. The defendants were then placed under arrest and cuffed. The motor vehicle was removed to the police station, where the mechanism of the electronic hide was ascertained (the button opened the compartment when the vehicle was placed in reverse).
Although the driver did produce a valid license when requested, the police were still entitled to conduct a threshold inquiry of the defendants if they had, independently of the motor vehicle violations, a reasonable suspicion, based upon specific, articulable facts, of criminal activity. Here, viewing the totality of circumstances, the Court concludes that an investigatory stop and cursory search of the motor vehicle and occupants were warranted. The police had reasonable cause to believe that drug transactions were taking place in the apartment which defendants had visited, based upon their discovery of heroin on, and the statements of, the persons earlier questioned at the MBTA station. Then, after defendants visited the apartment, they took evasive action when they spotted the detectives, going through two red lights and speeding up. When stopped, they proceeded to deny that they had visited the apartment in question, and the suspicious wire and button were observed in the car and beepers on Cabral’s person. Based on all of these circumstances, the police had more than a mere hunch, but had a reasonable suspicion based upon specific, articulable facts, that defendants were en *498 gaged in drug activity so as to justify, at the very least,[1] an investigatory stop. See: Commonwealth v. Moses, 408 Mass. 136 (1990) and Commonwealth v. Mercado, 422 Mass. 367, 371 (1996).
The more difficult question is whether the scope of the ensuing search for the “hide” exceeded that permitted pursuant to an investigatory stop. Although the case is a close one, the Court concludes that the search, under these particular circumstances, did not exceed the proper scope of an automobile search pursuant to an investigatoiy stop. See Commonwealth v. Heughan, 40 Mass.App.Ct. 102, 105 (1996); Commonwealth v. Almeida, 377 Mass. 266, 272 (1977) (pat-frisk of car, as well as of occupants, permissible even when occupants are temporarily in detention away from the car) .[2]
ORDER
For the foregoing reasons, the defendants’ motion to suppress evidence is denied.

The Commonwealth does not contend that there was, at that point, probable cause to arrest, so that the search was a proper one “incident to an arrest.” The Commonwealth does contend that the search was justified by defendant’s consent, but the Court finds no credible proof thereof.

Although the occupants were temporarily detained in the cruiser and were “not free to leave” while the car was searched, they were not arrested until after the contraband was found.