## STATE v. MYLO BOCK.[1]

December 2, 1949.

No. 34,915.

*John M. Lexcen,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Michael J. Dillon,* County Attorney, and *Luther Sletten,* Assistant County Attorney, for the State.

KNUTSON, JUSTICE.

Defendant was convicted of forgery in the second degree. He appeals from an order denying his motion for a new trial and from the judgment.

During the night of November 11, 1947, the General Roofing Company, located at 1837 East Lake street, Minneapolis, was broken into and 27 blank checks and a check-writing machine were stolen. About 1 p. m. on November 12, a man appeared at the National Tea Company store, located at 1510 Nicollet avenue, purchased groceries amounting to $3.21, and in payment thereof presented a check drawn on the check blank of General Roofing Company payable to Harold A. Camden in the amount of $62.20. The clerk, Myrtle P. Long, who

received the check, referred the customer to the cashier, Miriam J. Nigon, whose duty it was to approve checks before they could be cashed. The person presenting the check offered some identifications which he had, but they were not examined. Mrs. Nigon was suspicious of the check and stated that she would call the bank on which it was drawn, whereupon the person presenting the check excused himself, stating that he would be back in a minute. He failed to return. The check was not endorsed at the time it was presented.

Both Mrs. Nigon and Miss Long identified defendant as the person who presented this check, which is identified in the record as state's exhibit A. In describing the person who presented the check, Mrs. Nigon testified that he wore a light tan jacket and pants and a tan hat. Miss Long testified that he wore a khaki-colored jacket and trousers and a tan or light hat. The amount and name of the General Roofing Company on exhibit A were made with the check-writing machine of the company. The check bore the forged signature of Roy A. Drew, the owner of the company, and Carol Saunders, a nonexistent person so far as is disclosed by the record. Genuine checks drawn on the General Roofing Company were signed by Roy A. Drew, the owner, and Carole M. Basken, the office manager. The office manager, who testified at the trial, did not know any person by the name of Harold A. Camden. Neither Mrs. Nigon nor Miss Long had ever seen defendant prior to the time he presented exhibit A.

The conviction of defendant is based on the attempt to pass exhibit A.

Over the objection of defendant, evidence was admitted showing that on December 13, 1947, a man called at the Town Market Furniture Company, located at 116-120 Washington avenue south, and purchased two lamps costing $39.80. He offered to make a down payment of $15 and to pay the balance when he called for the lamps, which he stated he would do later. He identified himself as James Wagner, living at 2321 Second street northeast. He presented a check for $46.30, payable to James Wagner, purported to have been drawn on the account of and signed by Arthur Martin. Over the

signature of Arthur Martin appeared the name Arthur Martin Contractors, 521 South Ninth street, which was typewritten on the check. After deducting the down payment of $15, the individual presenting this check was given cash amounting to $31.30. Both the salesman, Alfred Gudmundson, and the acting cashier, Agnes L. James, identified defendant as the person who presented the check. Mr. Gudmundson testified that the individual who presented the check wore dark trousers, a light grey hat, and a red-and-black checkered jacket. Agnes L. James testified to substantially the same effect. This check is identified as state's exhibit B in the record.

On the same day, a man made a similar purchase of two lamps from the Community Furniture Company of Minneapolis and in a similar manner offered to make a down payment of $15. He presented a check identified with exhibit B, except as to a slight difference in the amount, receiving $31.70 in cash. Elmer W. Axelson, who handled the transaction, identified defendant as the person who presented this check. He did not remember what clothes the man wore, but testified that the man presenting the check gave his name as James Wagner and his address as 2331 Second street northeast. This check is identified in the record as state's exhibit F. On December 16, a man called at the Walden Furniture Company and in a like manner purchased two lamps, for which he offered a down payment of $15, presenting a check identical with exhibits B and F and again receiving cash in the sum of $31.70. David C. Walden, the owner of the store, identified the individual who presented this check as defendant. He described the person presenting the check as having worn light tan or brown pants, a tan jacket, and a tan hat. This check is identified in the record as state's exhibit D.

Exhibits B, D, and F were all drawn on the Northwestern National Bank. There was no account in this bank in the name of Arthur Martin or Arthur Martin Contractors. All three checks had been endorsed at the time they were presented.

Later in December, after defendant had been questioned concerning these checks and exhibit A, his apartment was searched by a

detective of the Minneapolis police force, but no clothing resembling any of that covered by a description of the person who passed or attempted to pass exhibit A or exhibits B, D, and F was found in his apartment aside from a light-colored hat. Both defendant and his wife testified that he had never owned clothing similar to that described by any of these witnesses. There is some testimony by the manager of the Richmond Apartments, located at 521 South Ninth street, that a man by the name of Arthur J. Martin had lived in the Richmond Apartments until October 21, 1947, but no attempt was made to connect this with defendant or any acquaintance of defendant. Defendant lived at 629 East Eighteenth street.

Defendant's defense consists largely of an alibi. The identification of defendant by the state's witnesses is positive, but equally positive are the witnesses for defendant that he was at home on the occasion when the above-mentioned checks were presented. The evidence is conclusive that he was at home during the early part of the evening of November 11, during which evening the blank checks of the General Roofing Company were stolen.

Defendant, as part of his defense, offered to prove that on November 12, 1947, a check drawn on the General Roofing Company, payable to Harold A. Camden in the amount of $62.20, identical with exhibit A, was presented to the Rydell Clothing Company at Washington avenue south and Hennepin avenue in payment for merchandise purchased, amounting to $4.50. This check, like exhibit A, bore the forged signature of Roy Drew and the additional signature of Carol Saunders. He offered to show by the clerk who received the check that the person who presented it was not defendant and further offered to show by the testimony of Detective Hillner of the Minneapolis police force that the check had been turned over to Hillner for investigation. This check is identified in the record as defendant's exhibit 1. He also offered to show that a check identical in form and amount was presented to an employe of the Washington Shirt Company on November 12 in payment for merchandise amounting to $12, and that when the man, who represented himself to be Harold A. Camden, was told that the employe of the store wished to

call the bank to verify the check he stated that he would go outside to change the parking of his car and that he did not return. He further offered to show by the clerk who accepted the check that the man who presented it was not defendant. This check is identified as defendant's exhibit 2. The offer of proof respecting defendant's exhibits 1 and 2 was rejected by the court upon the objection of the state.

After the trial and conviction of defendant, one Roland William Miller, on April 1, 1948, was charged by information with having committed the crime of forgery. He entered a plea of guilty and was placed on probation. In support of his motion for a new trial, defendant submitted an affidavit of Miller, wherein Miller positively stated that it was he who presented and cashed exhibits B, D, and F and that he, in company with police officers, had identified himself to all three concerns wherein these checks had been cashed; that he had presented to the county attorney a statement of all facts pertaining to these transactions; and that he does not know defendant or any member of his family.

The record shows that defendant had twice before been convicted of a felony, once for forgery and once for theft from a military reservation.

This appeal presents three questions for our determination:

(1) Was it error to admit in evidence exhibits B, D, and F and the testimony of witnesses identifying defendant as the person who cashed these checks?

(2) Was it error to refuse to admit evidence of other checks cashed by someone other than defendant on the same day and identical with exhibit A?

(3) Was it an abuse of discretion to deny a new trial after the admissions of Roland Miller that it was he who had cashed exhibits B, D, and F, as set forth in his affidavit?

It is a general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person charged with having committed a crime. But to this rule there are several

well-established exceptions. State v. Stuart, 203 Minn. 301, 281 N. W. 299. Thus, where it is necessary to prove the identity of a person, evidence of other similar crimes of the accused closely connected in time, place, and manner is admissible. State v. Lucken, 129 Minn. 402, 152 N. W. 769; State v. Barrett, 40 Minn. 65, 41 N. W. 459; Annotations: 3 A. L. R. 1540, 22 A. L. R. 1016, 27 A. L. R. 357, 63 A. L. R. 602. Such evidence is also admissible to show a common system, scheme, or plan embracing the crime charged. State v. Sweeney, 180 Minn. 450, 231 N. W. 225, 73 A. L. R. 380. Exhibits B, D, and F were within these exceptions to the general rule and therefore admissible.

Objection to the admission of exhibits B, D, and F, in addition to the general grounds that they were incompetent, immaterial, and irrelevant, was based on the remoteness in point of time and generally on the lack of sufficient foundation. Whether separate offenses are so closely connected with that with which defendant is charged as to show a general scheme or plan or permit an inference of guilt to be drawn is a matter resting largely within the discretion of the trial court. State v. Robbins, 185 Minn. 202, 240 N. W. 456. We will not reverse unless there is a clear abuse of discretion. State v. Voss, 192 Minn. 127, 255 N. W. 843. We find no abuse of judicial discretion in admitting exhibits B, D, and F.

■ Objection to the admission of defendant's exhibits 1 and 2 was not based upon an insufficient foundation, but for the reason "that there isn't any showing in the offer of evidence by the defendant's attorney that this defendant did not offer the check for payment to the National Tea Company, on November 12, 1947, nor the other checks in evidence relative to the Community Furniture Company, the Walden Furniture Company, and the Town Market Furniture Company; there isn't any showing by this evidence that this defendant was not the person who offered and passed these checks."

Of course, defendant denied having passed any of the above checks. His defense was an alibi. Proof of similar acts constituting separate and distinct crimes is admissible under an exception to the general rule, not for the purpose of showing specifically that defendant com-

mitted the crime with which he has been charged, but for the purpose of permitting the trier of facts to draw an inference from the evidence showing a general plan or scheme, consisting of a series of acts similar to that with which defendant is charged, that he did commit the crime with which he is charged. 2 Wigmore, Evidence (3 ed.) § 304. In determining defendant's guilt, the identity of the person who presented exhibit A is the decisive factor. Inasmuch as an inference that defendant uttered exhibit A is permissible from evidence showing that he passed exhibits B, D, and F, there appears to us no good reason why an opposite inference that defendant was not the person who offered exhibit A is not permissible from a showing that checks identical with exhibit A were offered or passed on the same day and in a like manner by someone other than defendant. In discussing this question, Wigmore, in his work on evidence (3 ed.) § 304, has this to say:

"It should be noted that this kind of evidence may be also available to *negative the accused's guilt*. *E.g.* if A is charged with forgery, and denies it, and if B can be shown to have done a series of similar forgeries connected by a plan, this plan of B is some evidence that B and not A committed the forgery charged. This mode of reasoning may become the most important when A alleges that he is a victim of *mistaken identification*."

Again, in *Id.* § 341, p. 245, we find the following:

"Notice that here, as throughout this series of offenses, the principle of similar acts (*ante,* § 304) can be used to *exonerate an innocent accused,* where the acts evidencing the plan are those of a *third person* not the defendant."

In Commonwealth v. Murphy, 282 Mass. 593, 185 N. E. 486, while the foundation laid for the admission of such evidence was stronger than here, the facts otherwise are quite similar. In that case, defendant was charged with having obtained money from four different women householders in May and June by hiring an apartment, paying rent in advance with a check, and receiving the change in cash, which check was falsely drawn on a bank having no such

account. All four women identified the defendant. He denied all four transactions. The issue was one of identity. The defendant offered to show that during the months of April, July, and September a man using exactly the same method had obtained money from three other women; that the three checks were identical in typing and handwriting with the four checks alleged to have been cashed by defendant; that the defendant had been tried and acquitted for the September check transaction; that the woman defrauded in September, who had identified him on that charge at the trial, would now testify that she was mistaken; and that the defendant was in custody on the date of the September transaction and therefore could not have been the man involved in that transaction. The trial court rejected the evidence. On appeal it was held to be error. The Massachusetts court on appeal said (282 Mass. 596, 185 N. E. 487):

"No one, we think, will deny that if the evidence offered is the truth it well might shake confidence in the identifications upon which alone this conviction rests. * * * It indicates that two others who met the man who writes and acts as the defendant is accused of doing are ready to testify that he is not the defendant. It does not establish his innocence. The handwriting on the seven checks may not all be that of one man. Two thieves may have worked together to protect one another by following the same plan and acting and looking in the same way. It does not follow that, because one did not do a thing on October 1, he did not do a similar thing in May and June. Acquittals in two courts do not establish freedom from guilt on a different charge on a different date in a different court. Mistake in identification by one person does not prove another one wrong. These are considerations for a jury. But, owing to the ruling, no jury has passed upon them. Unless some positive rule of law prevents, it would seem that the defendant is entitled to have a jury consider the evidence, pass upon its credibility and weigh it with the evidence of identification upon the issue of his guilt."

Identification of an individual based on such slight opportunity for observation is, at best, a tricky thing. See, Wigmore, The Science of Judicial Proof (3 ed.) § 254, citing and reviewing the Adolf Beck trial in England.

■ Where the state has introduced evidence of other crimes to establish identity, the defendant is entitled to rebut the inference that might be drawn therefrom by showing that the crimes have been committed by someone else. 22 C. J. S., Criminal Law, § 622, p. 953. He should also have the right to show that crimes of a similar nature have been committed by some other person when the acts of such other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of defendant as the person who committed the crime charged against him. State v. Harris, 153 Iowa 592, 133 N. W. 1078.

Here, the crimes relied upon by the state were much more remote in point of time than those defendant sought to show. State's exhibits B, D, and F were passed or offered about a month later than the check upon which defendant's prosecution rests. They were not the same either as to payee or payer. On the other hand, the checks which defendant offered to prove had been passed by some other individual were identical with that upon which defendant's prosecution is based, both as to date, payee, and payer, and were offered or passed on the identical day that the check charged against defendant was offered. The method of operation was also identical with that which the state claims defendant used. Defendant was entitled to have the jury pass upon the credibility and weight of this evidence, together with that of the state, in determining the identity of the person who committed the crime charged against defendant. It was error to exclude the evidence offered by defendant.

■ There remains for consideration the third and final contention of defendant. This relates to the affidavit of Miller. The affidavit is not controverted by the state, and, for the purpose of this decision, we accept it as true.

There can be little doubt that the positive identification of defendant as the person who presented and cashed exhibits B, D, and

F by those to whom the checks were presented, in view of defendant's former convictions, would have a serious impact upon the minds of the members of the jury in determining whether defendant was the person who cashed exhibit A. The trial court was of the opinion, and the state now contends, that at best the affidavit was only of an impeaching nature and cumulative of the other denials of defendant that he cashed any of these checks. The identification of defendant, while positive, was based upon a slight opportunity to observe defendant. None of the witnesses had any previous acquaintance with him. That they could easily have been mistaken has now been demonstrated by the affidavit of Miller, assuming that to be true, as we must.

While it is true that the matter of granting a new trial on the ground of newly discovered evidence rests largely in the discretion of the trial court and that a new trial will not ordinarily be granted where the newly discovered evidence is only of a cumulative or corroborative nature, it is also true that cumulative evidence of an untrue or erroneous nature is as apt to lead to an unjust result as cumulative evidence that is true may lead to a correct one. It can hardly be supposed that the erroneous multiplication of the identification of defendant by all these witnesses would fail to impress the jury when considered with the evidence of defendant's former convictions. Balanced against the testimony of the witnesses who identified defendant was the evidence pertaining to his alibi. Whether the jury would have been willing to believe his witnesses concerning his alibi had they had the benefit of the admissions of Miller, and possibly the elimination of exhibits B, D, and F entirely, is something we cannot tell. However, in view of the prejudicial nature of the testimony concerning the passing of exhibits B, D, and F and the identification of defendant as the person who passed them by several witnesses, we feel that in the interest of justice defendant should be granted a new trial.

Reversed.