STATE of Minnesota, Respondent,

v.

Bruce Edward WILLIS, Appellant.

No. C8–84–1146.

Court of Appeals of Minnesota.

March 19, 1985.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Beverly J. Wolfe, Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Appellant Bruce Willis was convicted of aggravated robbery, Minn.Stat. § 609.245 (1982), and burglary, Minn.Stat. § 609.58, subd. 2(1)(b) (1982). On appeal he contends the trial court erred in excluding appellant's "reverse *Spreigl*" evidence, the evidence was insufficient to sustain his convictions and the upward durational departure was not justified by substantial and compelling circumstances. We affirm and modify the sentence.

### FACTS

On April 20, 1983 at 7:15 a.m., as Tammy Curttright was leaving her apartment, she was jumped by a man standing in the central foyer. Tammy was pushed to the floor and when she tried to hit her attacker, he bit her fingers. The assailant indicated he had a knife in his pocket and told Curttright if she didn't shut up she would be killed. He then dragged her up some stairs and struck her face and head with his fists. He pounded her head on the steps, then grabbed her purse and fled.

Curttright required stitches in her ear, a tetanus shot and started chiropractic treatment for adhesions which formed in her jaw.

She described her assailant as a black male, 5′6″ to 5′7″ tall, 140–150 pounds, medium complexion, clean face, age 28–29, and wearing a stocking hat. From a lineup of six photographs, she identified appellant as her assailant. Several weeks later a six-man lineup was conducted and Curttright again identified appellant as her assailant. At trial, Curttright explained how she was certain of her identification,

Well, because I got a close look at his face during—when he was attacking me, his face was always there. I mean it was right in front of me the whole time and so I was looking at his features. And looking at the photos it's hard just to pick out the features because you have to look at the hair and everything because it's a photo. Then the photo is only, you know, neck up, (indicating). So when I saw him in a live line up and when he came up to the glass, I was able, more able than in the photo, to look at him and to look at his neck and his shoulders and his arms and his hands and I was also able to see a profile. And I saw a profile in the photo that really helped alot but the actual physical of looking at him just made it really clear. His actions too, the was—when they called out his number, the way he jumped.

At trial Curttright identified appellant as her assailant. The State also presented evidence that on May 21, 1983, Wilma Urgang turned over to police a bag containing miscellaneous checkbooks and identification cards. Urgang's sister was appellant's girlfriend at the time and Urgang had discovered the bag in her apartment house hallway. Among the items were a checkbook and identification cards belonging to Curttright and Linda Schneider.

As *Spreigl* evidence, the State presented evidence of another burglary of Linda Schneider, to which appellant pleaded guilty. The trial court prevented appellant from introducing "reverse *Spreigl*" evidence of another crime of a similar nature which appellant claimed was committed by the same person who committed the offense charged here. The victim of the "reverse *Spreigl*" offense could not identify appellant as the perpetrator. Appellant was convicted and sentenced to concurrent sentences of 124 months for aggravated robbery and burglary.

### ISSUES

1. Did the trial court err in excluding appellant's "reverse *Spreigl*" evidence?

2. Was the evidence sufficient to sustain this conviction?

3. Was the trial court's durational departure justified by substantial and compelling circumstances?

### ANALYSIS

#### I.

Appellant argues that the trial court improperly excluded his "reverse *Spreigl*" evidence, a burglary and sexual assault occurring on April 16, 1983 on Grand Avenue in Minneapolis. The victim in that crime attended the same physical lineup which Curttright viewed, but was unable to identify her assailant. Appellant's theory was that both crimes were committed by the same person because of a similar modus operandi, similar location, similar time and similar suspect descriptions. Appellant claimed that since the April 16 victim did not identify appellant as her assailant, that it was relevant evidence in showing that appellant did not commit the crime charged here.

In *State v. Bock*, 229 Minn. 449, 39 N.W.2d 887 (1949), the leading Minnesota decision on "reverse *Spreigl*" evidence, the supreme court held that a criminal defendant, to negate his guilt, may show that other crimes of a similar nature have been committed at or about the same time *by some person other than himself.* (Emphasis added.) *See Holt v. United States*, 342 F.2d 163, 165–66 (5th Cir.1965). This must be by clear and convincing evidence. *State v. Billstrom*, 276 Minn. 174, 149 N.W.2d 281 (1967). To introduce such evidence appellant must show that the other crime was committed by someone other than himself and that the other crime was closely connected in point of time and method of operation as to cast doubt on the identification of him as the accused in the charged crime. *Bock*, 229 Minn. at 458, 39 N.W.2d at 891–92.

Here appellant only offered to show that the victim in the previous offense could not identify appellant as her assailant; she did not exclude the possibility that appellant was the assailant. The trial court did not abuse its discretion in determining that appellant's proffered evidence had no probative value and carried the risk of unduly confusing the jury under Minn.R. Evid. 403.

#### II.

There is no merit to appellant's claim of insufficient evidence to sustain his conviction.

#### III.

Appellant's concurrent 124 month sentences included the 97 month presumptive sentence, a 24-month upward durational departure, and a three-month additional sentence pursuant to Minnesota Sentencing Guidelines II.B.2.b for offenders with a criminal history score of six or more when a custodial status point is assigned.

1. Appellant is correct that the three-month additional sentence was improper because Minnesota Sentencing Guidelines II.B.2.b was effective for offenses committed on or after November 1, 1983, not for sentences after that date.

2. In justifying its 24-month upward departure, the trial court referred to the gratuitous cruelty inflicted on the victim—she was dragged upstairs, bitten, and

received multiple blows to her face and head.

Aggravated robbery is committed when a person, "while committing a robbery * * * inflicts bodily harm upon another * * *." Minn.Stat. § 609.245. Bodily harm means "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7.

Appellant contends that since the infliction of bodily harm is a required element of aggravated robbery, it cannot be taken into account in departing. *State v. Saharath*, 355 N.W.2d 312 (Minn.Ct.App.1984). Appellant claims that this was a typical aggravated robbery. *See State v. Cook*, 351 N.W.2d 385 (Minn.Ct.App.1984); *State v. Winchell*, 352 N.W.2d 447 (Minn.Ct.App. 1984). On the other hand, the State argues that the infliction of one injury was all that was required and hence the multiple blows to Curttright and the terrorizing threats showed this was beyond the typical aggravated robbery. *State v. Morales*, 324 N.W.2d 374, 377 (Minn.1982).

Particular cruelty is a valid factor for departure purposes, Minnesota Sentencing Guidelines II.D.2.b(2). Here, appellant inflicted multiple blows to the victim's face (requiring five stitches to her ear), bit her fingers (for which she received a tetanus shot), pounded her head at least four times on the steps, and threatened to kill her with a knife. The attack occurred within the zone of privacy of appellant's home. *See State v. Hines*, 343 N.W.2d 869, 873 (Minn. Ct.App.1984). These factors constitute unnecessary and gratuitous cruelty and injury, *State v. Hamilton*, 348 N.W.2d 112 (Minn.Ct.App.1984). His conduct was significantly more serious than typically involved in the offense committed. *State v. Gist*, 358 N.W.2d 664 (Minn.1984).

3. No reasons, however, appear in the record to justify the departure for the burglary sentence. *See State v. Hines*, 343 N.W.2d 869, 873 (Minn.Ct.App.1984). However, as in *Hines*, the error is harmless as the sentences for both convictions run concurrently. The burglary sentence should reflect the reduction to 97 months.

## DECISION

The trial court did not err in excluding "reverse *Spreigl*" evidence and the evidence was sufficient to sustain appellant's convictions. The limited durational departure of 24 months for aggravated robbery was justified by substantial and compelling circumstances; however, there was no justification for departure on the burglary sentence. The three-month additional sentence under Minnesota Sentencing Guidelines II.B.2.b was not applicable because this change in the Guidelines was not effective for offenses occurring before November 1, 1983. Appellant's sentence is thus reduced to 121 months for the aggravated robbery, concurrent with 97 months for burglary.

Affirmed as modified.