STATE of Minnesota, Respondent,

v.

Theodore Jimmie PORTER, Appellant.

No. C1–86–2112.

Court of Appeals of Minnesota.

Aug. 18, 1987.

Hubert H. Humphrey, III, St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by NIERENGARTEN, P.J., and FOLEY and RANDALL, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Appellant Theodore Jimmie Porter was convicted of one count of simple robbery in violation of Minn.Stat. § 609.24 (1984) and sentenced to a presumptive term of imprisonment of 30 months. We affirm.

## FACTS

On May 17, 1986, at about 3:11 a.m. Gail Holley, an assistant manager at a Zantigos restaurant in Minneapolis, was robbed as she was finishing her shift. Holley informed the first police officer to arrive that she had given about $700 of the restaurant's money to a man with a gun. She described the robber as a black male, four to five inches taller than her own height of 5'1", with a short afro and facial hair. She further stated that he was wearing a thigh-length coat, possibly green and possibly with a hood, camoflage pants, and tennis shoes. She was unsure at that time whether she could identify the man.

No further action was taken by the police on this matter until June 9, 1986, when they received a phone call from a confidential informant. The informant identified Porter as the robber and told the police that he had obtained close to $1000. The informant reported that Porter was on parole for attempted murder and robbery from Chicago, described Porter's automobile and license number, and gave Porter's address in Minneapolis, facts which were later verified by the investigators. In response to a question by one of the investigators assigned to the case, the informant indicated that Porter had camoflage pants and a dark coat.

The investigators obtained a photo of Porter from his parole officer, took a Poloroid of the photo and of five others from their own files, and whited out the height indicator lines in Porter's photo. This photo display was shown to Holley, who tentatively identified Porter as the man who robbed her. Holley was also able to recall that the man's tennis shoes were black with red laces, that his jacket had fur around the hood, and that he had fled with a blue zippered money bag.

Based on an affidavit prepared by the investigators, a search warrant was obtained. They were authorized to seize a number of items, including $770 in currency, a dark blue parka with fur on the hood, a pair of black tennis shoes with red laces, camoflaged trousers, a blue zippered bag, a dark colored handgun with ammunition, and papers and writings to show constructive possession and occupancy at the address.

During execution of the search warrant, the police seized a replica automatic pistol, camoflage pants, a blue jacket with a fleece collar, red tennis shoes with black laces, and a dark parka. Porter was also arrested at that time.

Holley thereafter identified the pants, fleece-collared jacket, and tennis shoes as having been worn by the robber. She explained that she must have reversed the colors on the tennis shoes. She identified the pistol primarily by the clicking sound it made when the slide was pulled back and forth. She also indicated to the investigators that she had been informed by Zantigos that the amount taken was $900 rather than $770.

During an eight-person lineup, Holley examined each man's face and profile and heard each repeat phrases similar to ones she had reported to have been said during the robbery. She thereafter positively identified Porter as the man who had robbed her.

Porter was charged with one count of simple robbery in violation of Minn.Stat. § 609.24 and pled not guilty. An omnibus hearing was held, at which the court ruled that the identification procedures used during the photo display and lineup were not impermissibly suggestive, that the search warrant was valid and that the items seized from Porter's home were admissible at trial, and that Porter's 1979 conviction would be admissible as possible impeachment evidence should Porter decide to testify at trial.

Porter elected not to testify at trial and the defense rested without calling any witnesses. The jury returned a verdict finding Porter guilty as charged. This appeal followed imposition of sentence and entry of judgment.

## ISSUES

1. Were the photo display and the lineup impermissibly suggestive?

2. Was the evidence seized from Porter's home and automobile properly admitted into evidence?

3. Was the evidence sufficient to sustain the verdict?

4. Did the trial court properly rule that a 1979 conviction for attempted murder would be admissible for possible impeachment purposes?

5. Did the trial court properly exclude evidence involving another robbery?

## ANALYSIS

### I

Porter contends that because the photo display and subsequent lineup were impermissibly suggestive, all identification testimony was improperly admitted at trial. Identification procedures may be rendered impermissibly suggestive if "under all the circumstances it appears that the identification procedures were so unnecessarily suggestive as to create a 'very substantial likelihood of irreparable misidentification.'" *State v. Montjoy*, 366 N.W.2d 103, 106–07 (Minn.1985) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

■ Examination of the photo display fails to support Porter's claim and shows that the officers made a deliberate attempt to present uniform, consistent photos by making Polaroid copies of mugshots out of their own files and by whiting out the height indicator lines on Porter's photo. Nor does the officers' advice to Holley that they had a suspect in mind render the display impermissibly suggestive. A witness who has been asked to view a photo display has probably already assumed that a suspect has been found and that one of the photos is of that suspect.

■ Porter's challenge to the lineup must similarly be rejected. Holley's viewing of the items seized pursuant to the search warrant prior to the lineup could have had no effect on her identification of Porter; she was never told who the items belonged to. Porter also insists that because he was the only participant whose photograph had been depicted in the photo display, Holley was led to assumed that she had been correct in her previous identification of him and that she should again identify him. Such suggestiveness, if any, arises anytime a photo display is used in conjunction with a lineup and does not render the identification invalid.

■ Even if it could be soundly argued that the lineup was impermissibly suggestive, there was little likelihood of misidentification in this case: Holley viewed the robber for some 15 minutes, she gave fairly consistent descriptions (although with time she was able to remember more details), and she was able to positively identify Porter as the robber from his voice (which is especially convincing because during the incident the man had made numerous statements to her). *See State v. Lambert*, 278 N.W.2d 57 (Minn.1979).

## II

Porter claims that the search warrant was not supported by probable cause and that the officers conducted a general search of his home resulting in seizure of unauthorized items.

■ Reviewing courts are to give deference to determinations of probable cause by magistrates issuing search warrants. *United States v. Carlson,* 697 F.2d 231, 237 (8th Cir.1983). An affidavit provides probable cause for the issuance of a warrant if it contains sufficient evidence to lead a reasonably prudent person to believe that there is a basis for the search. *State v. Suess,* 280 Minn. 308, 159 N.W.2d 180 (1968).

■ The affidavit in this case contains information obtained from the informant which was fairly accurate as to the crime and as to Porter's clothing, automobile, address, and parole status. The affidavit also contains evidence in the form of Holley's tentative identification of Porter as the robber through a photo display. Given this information, the issuing judge clearly made a practical, common-sense decision that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *State v. Wiley,* 348 N.W.2d 86 (Minn.Ct.App.1984), *aff'd,* 366 N.W.2d 265 (Minn.1985).

■ Nor were the items seized unauthorized by the warrant. There is a strong similarity between the property seized and that listed in the warrant, and the officers could easily conclude that the items seized were most likely worn by Porter during the crime. *See State v. Streitz,* 258 N.W.2d 768 (Minn.1977).

## III

Porter contends that the evidence is insufficient to sustain his conviction because the State failed to prove beyond a reasonable doubt that he was the individual who committed this crime. On review, this court "must view the evidence in a light most favorable to the jury verdict and decide whether the jury could reasonably have found the defendant guilty of the crime charged." *State v. Olkon,* 299 N.W.2d 89, 106 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981), (quoting *State v. Swain* 269 N.W.2d 707, 712 (Minn.1978)).

A verdict may be based on the testimony of a single witness. *State v. Burch*, 284 Minn. 300, 313, 170 N.W.2d 543, 552 (1969). Holley identified Porter as the robber and identified the clothing and gun seized from Porter's apartment. Her credibility was not seriously challenged during trial, and the jury could easily have believed her despite any minor inconsistencies in her testimony.

## IV

Porter contends that the omnibus court abused its discretion by ruling that his 1979 conviction for attempted murder could be used for impeachment purposes and that this ruling had a chilling effect and prevented him from testifying at trial.

Under Minn.R.Evid. 609, evidence of a defendant's prior record may be admitted during cross examination to attack credibility if the conviction is not more than ten years old and was punishable by death or imprisonment of one year, and if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect. *See State v. Jones*, 271 N.W.2d 534, 537–38 (Minn.1978) (setting out factors to consider in determining whether the probative value of conviction outweighs its prejudicial effect).

Porter argues that admission of this evidence was prejudicial. He asserts that his prior conviction for attempted murder was substantially similar to the current charge because Holley testified that the man who robbed her also threatened to kill her. However, this aspect of the robbery was not a central part of Holley's testimony nor was it emphasized by the State.

Moreover, this evidence had clear probative value. Had Porter elected to testify, his credibility would have been crucial because the jury would have had to determine whether to believe him or Holley. This evidence therefore had "legitimate impeachment value because [it would] allow the jury to see 'the whole person' and therefore permit the jury to better judge the truth of the defendant's statements." *State v. Ford*, 381 N.W.2d 30, 32–33 (Minn.

Ct.App.1986), *pet. for rev. denied,* (Minn. March 27, 1986). We therefore conclude that the trial court's ruling on the admissibility of this evidence was proper.

## V

Porter's final argument centers around the trial court's refusal to allow his attorney to question the police investigator about another robbery victim's inability to identify Porter. The police apparently believed that Porter had committed another Zantigos robbery, and another victim was present at the lineup with Holley. While Holley identified Porter, this other victim identified another man.

The trial court ruled this evidence irrelevant. Porter claims that evidence of this other robbery was admissible if not as reverse *Spreigl* evidence, then as evidence to dispel any belief which might have been planted in the jury's mind that he was possibly guilty of another robbery as well as this one.

Porter admits that in order to introduce such reverse *Spreigl* evidence, a defendant must establish by clear and convincing evidence that the other crime was committed by someone other than himself and that the other crime was so closely connected in point of time and method of operation as to cast doubt on the identification of him as the accused in the charged crime. *State v. Bock*, 229 Minn. 449, 39 N.W.2d 887 (1949); *State v. Willis*, 364 N.W.2d 498 (Minn.Ct. App.1985). No such showing was made by Porter; his proffered evidence had little or no probative value and was largely irrelevant to the facts of this case.

## DECISION

Affirmed.