STATE of Minnesota, Respondent,

v.

Michael HIGGINS, Appellant.

No. C1–87–1424.

Court of Appeals of Minnesota.

April 12, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Linda K. Jenny, Asst. Co. Atty., Minneapolis, for respondent.

Andrew S. Birrell, Meshbesher, Singer & Spence, Ltd., Minneapolis, for appellant.

Heard, considered and decided by KALITOWSKI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

This appeal is from judgments of conviction for one count of second degree assault and one count of third degree assault. The jury found appellant Michael Higgins not guilty of the more serious charge of first degree criminal sexual conduct. Higgins was sentenced to a mandatory minimum term of 36 months. We affirm.

## FACTS

Appellant was charged with second and third degree assault and first degree criminal sexual conduct based on an incident occurring in the early morning hours of January 10, 1987. The complaining witness, C.H., testified she had gone out on an arranged "blind date" with a man, meeting him at the Jersey Sports Bar the preceding night. After visiting another bar, they later met Glenn Pinkney at the Jersey Bar and C.H. talked with him. She agreed to give him a ride to his apartment, and later, when he changed his mind, to a friend's apartment.

A man C.H. identified as Higgins was at the apartment, along with a woman named Carmen. The four sat around the dining room table talking and drinking beer. Eventually, C.H. asked to use the bathroom, saw something in the adjacent bedroom, and asked the others what this "something" was. Appellant and Carmen became enraged at C.H. for calling what turned out to be a child a "thing." When they continued to yell at her, she apologized and tried to leave.

When C.H. got outside the door to the apartment, all three of the others grabbed her to keep her from leaving. They pulled her hair and clothing and appellant had his hands around her throat, choking her. She kicked out at appellant, causing him to fall down the stairs. She testified appellant then "totally blew up." Appellant and Pinkney bashed her head against the wall of the landing. She testified appellant then pulled a gun, pointed it at her temple, hit her on the head with it, and eventually directing her back to the apartment.

In the apartment, C.H. testified, she was beaten for 30 to 40 minutes by appellant and Carmen. At some point, while she was mopping up her own blood at the direction of appellant and Carmen, another man came into the apartment,. When she stopped mopping, the others had left, except for Pinkney. She could hear voices outside the back entrance.

When appellant returned, she testified, he made her perform fellatio in return for a promise she would be allowed to leave. She then left and ran for the car, but Pinkney followed her and made her perform fellatio with him. She then agreed to drive Pinkney home, but he got out of the car after two blocks.

When C.H. returned home, she did not wake her sister. She testified she did not call police because she was afraid of retaliation. She called a friend, Johnson Yeanay, and drove to his house. There she washed herself and her bloodstained coat and dress, after talking to Yeanay and calming down. She estimated she stayed at Yeanay's about one-half hour, then drove home because Yeanay had to go to work.

At home, C.H.'s sister awoke and convinced her to call police. X-rays subsequently taken at a hospital showed her nose was broken in two places and her cheekbone was also fractured. She had a gash on her head and many bruises. A sexual assault exam was negative for sperm or enzyme associated with sperm.

C.H. admitted she told a false story to co-workers following the assault to mask the fact she had initially given one of the assailants, Pinkney, a ride.

Yeanay testified concerning the call from C.H., stating she made it clear she was not calling from home. He testified C.H. was bloody and crying hysterically, and related her description of the incident. He testified he had known her for four or five years. On direct examination, he admitted to a 1985 conviction for second degree assault against his wife. Defense counsel had earlier elicited C.H.'s awareness of this conviction.

On cross-examination, defense counsel asked Yeanay whether the 1985 assault against his wife was unprovoked. The trial court sustained an objection to the question, and defense counsel did not pursue further the underlying facts of Yeanay's assault conviction.

Appellant presented the testimony of Arthur McCottrey, the man who walked into the apartment in the middle of the alleged assault. McCottrey testified he entered through the back door, talked with appellant and Pinkney, and heard fighting in the dining room. According to McCottrey, Carmen was fighting with another woman and appellant stated he would break up the fight. Appellant, Pinkney and McCottrey then went out the back door, and McCottrey left. McCottrey estimated he was in the apartment for about two minutes.

The defense, after eliciting evidence that Pinkney was also arrested for the assault, attempted to introduce evidence that Pinkney had earlier been convicted of a violent assault. Pinkney did not testify at the trial. Following an offer of proof on Pinkney's prior conviction, the trial court ruled it inadmissible.

## ISSUES

1. Did the trial court abuse its discretion in limiting cross-examination on the facts of Yeaney's assault conviction?

2. Did the trial court abuse its discretion in excluding evidence of Pinkney's prior conviction?

3. Was the evidence sufficient to support the convictions?

## ANALYSIS

### I.

*Cross-examination*

■ Appellant contends the trial court abused its discretion in limiting his cross-examination of Yeanay concerning the underlying facts of Yeanay's prior offense. Appellant argues the defense wanted to show C.H. could have been assaulted by others after she left the apartment, as she was in the company of two men with prior assault convictions, Yeanay and Pinkney, and the jury should have been told that Yeanay's prior conviction was for an unprovoked assault against a woman.

Yeanay's prior conviction was not "reverse *Spreigl*" evidence, as appellant contends. In *State v. Bock*, 229 Minn. 449, 39 N.W.2d 887 (1949), the supreme court held a criminal defendant, to negate his own guilt, may show other crimes of a similar nature have been committed about the same time by someone other than himself. These other offenses must be so closely connected in time and method of operation that they cast doubt on the identification of the defendant as the perpetrator of the charged offense. *Id.* at 458, 39 N.W.2d at 892; *see also State v. Willis*, 364 N.W.2d 498, 500 (Minn.Ct.App.1985). Higgins does not, however, attempt to show, nor could he show the 1985 assault by Yeanay on his wife was so similar to the assault on C.H. that it would directly link Yeanay to the crime.

Yeanay's prior conviction falls within the category of collateral matters involving a state's witness which "may" tend to support a defendant's theory that the witness committed the offense. *See State v. Hawkins*, 260 N.W.2d 150, 158 (Minn.1977). In *Hawkins*, the supreme court held it was error to exclude evidence of prior acts of violence and illegal dealings with the victim by a state's witness who admitted he was at the scene and whose testimony was the crucial evidence against the defendant.

The supreme court in *Hawkins* noted the necessity of proper foundation for this evidence:

Proper foundation must be laid for the admission of such evidence, however, to avoid the consideration of matters collateral to the crime.

*Id.* at 159.

■ Appellant made no offer of proof to establish foundation for further inquiry into the facts of Yeanay's prior offense (it was not in dispute that the existence of Yeanay's prior felony record could come out for purposes of impeachment. Minn.R. Evid. 609(a)). Generally, in impeaching a witness, an examiner is limited to eliciting the fact and nature of the witness' prior offense. *State v. Williams*, 297 Minn. 76, 83–84, 210 N.W.2d 21, 25 (1973). The state had elicited these facts on direct examination of Yeanay.

Appellant failed to present any facts linking Yeanay to the assault. The only suggestion of any nature was in questioning C.H. and Yeanay concerning a possible "falling out" in their relationship. Each denied it, while admitting they were more distant after Yeanay's change of residence.

In *Hawkins*, collateral matters concerning the state's witness were ruled admissible largely because the witness admitted he was at the murder scene and his testimony was crucial to the conviction. *See State v. Gustafson* 379 N.W.2d 81, 84 (Minn.1985) (distinguishing *Hawkins*, where witnesses denied being at the scene and had alibis, and their testimony "was not the sole cause of the conviction"). Yeanay's testimony served only to corroborate C.H.'s story. Yeanay may have been at the "scene" in the sense he saw C.H. before her injuries were reported to any one else. However, the evidence, including testimony by appellant's own witness, McCottrey, established C.H. was assaulted at the apartment where appellant and Carmen spent the evening. There was no evidence Yeanay had ever been at this apartment. If there was evidence of a second assault that could have been committed by Yeanay, appellant failed to present it, or to suggest it by cross-examination of C.H. and Yeanay.

The supreme court stated in *Hawkins* that

evidence tending to incriminate another is inadmissible in the absence of proof of facts to connect that person with the crime. This requirement avoids the use of bare suspicion * * *.

*Hawkins,* 260 N.W.2d at 159. Appellant's theory that Yeanay could have been the person who committed the assault that appellant is charged with rests on an inference or "bare suspicion" based solely on his prior conviction. The trial court did not err in restricting appellant's cross-examination into collateral matters. Appellant did not produce any evidence and only argued the inference.

## II.

*Impeachment of person not testifying*

■ Appellant also claims prejudicial error in the exclusion of evidence of Pinkney's prior assault conviction. Appellant attempted to introduce this evidence through the investigating officer. His offer of proof consisted of the record of Pinkney's conviction, which was for second degree assault.

Appellant claims Pinkney's prior record was relevant to show Pinkney may have committed the assault after C.H. left the apartment. Again, as with Yeanay, appellant failed to advance any admissible evidence that Pinkney may have committed the assault on his own. After cross-examining C.H. extensively concerning what appellant and Pinkney did inside the apartment building, counsel asked only two questions concerning a possible separate assault by Pinkney outside the building. Moreover, his own witness McCottrey testified to the fight or assault happening inside the apartment, although attributing it to Carmen.

We recognize appellant's right to present evidence supporting his theory of defense but, as with Yeaney, appellant produced no actual evidence that Pinkney may have committed the assault with which appellant was charged. Appellant could only argue that if the jury knew that Pinkney had a prior assault conviction, the jury could then infer that Pinkney had assaulted C.H. Appellant claims on appeal he wanted to show Pinkney may have produced the gun C.H. saw. Defense counsel brought out on cross-examination that appellant was dressed only in blue jeans and a T-shirt. His argument that with that clothing, appellant could not have concealed a gun, is made for the first time on appeal. Pinkney's prior conviction was for assault with a knife, not a gun. There was no direct or substantial evidence that Pinkney had assaulted C.H. The trial court had the discretion to allow or disallow evidence of Pinkney's prior conviction based on the evidence produced to that point. Given the discretion afforded a trial court on evidentiary rulings during trial, we find no error in the exclusion of evidence of Pinkney's prior assault conviction, Pinkney not having taken the stand.

## III.

*Sufficiency of the evidence*

■ Appellant contends the evidence was insufficient to prove the assault charges. He relies primarily on inconsistencies in C.H.'s testimony and her false story to co-workers.

Minor inconsistencies in a complainant's testimony, or between her testimony and previous statements, do not deprive a verdict of sufficient support if the complainant's testimony, taken as a whole, is consistent and credible. *State v. Beard,* 380 N.W.2d 537, 541 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. March 3, 1986). Appellant seizes on inconsistencies in statements made immediately after the event. These inconsistencies were brought out and argued to the jury. A jury could attribute them to confusion or miscommunication, understandable under the circumstances, but still believe the overall reliability of C.H.

Appellant alleges a number of inconsistencies between C.H.'s testimony and other evidence. The jury is in the best position to evaluate the circumstantial evidence surrounding the crime. *State v. Anderson,* 379 N.W.2d 70, 75 (Minn.1985), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986).

■ The false story told by C.H. to her co-workers, to cover up only the origins of her encounter with appellant, was thoroughly aired by both parties. Her credibility, or lack of it, was open for the jury to determine. *State v. Daniels*, 361 N.W.2d 819, 826 (Minn.1985). Appellant claims that the verdict of not guilty of sexual assault indicates the jury found C.H. totally unbelieveable. This argument is not necessarily so. It was within the jury's province to find that the state had not proved the sexual assault by proof beyond a reasonable doubt (for instance, the sexual assault examination on C.H. was negative), but that the two counts of physical assaults had been proven.

### DECISION

The trial court did not err in its evidentiary rulings. The evidence was sufficient to support the conviction.

Affirmed.