*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1552**


State of Minnesota,
Respondent,

vs.

Abdullahi Jimale Jama,
Appellant


**Filed September 2, 2014
Affirmed
Peterson, Judge**

Hennepin County District Court
File No. 27-CR-12-25969


Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Benson Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and

Schellhas, Judge.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from his convictions of second-degree assault, pattern of stalking conduct, and stalking, appellant argues that the uncorroborated allegations of the complainant were insufficient to prove his guilt beyond a reasonable doubt. We affirm.

## FACTS

On August 8, 2012, a Minneapolis police dispatcher received a 911 call about a male harassing a female in a parking lot near Tenth Street and Portland Avenue. Minneapolis Police Officer Tou Thao responded to the call and spoke with the victim, I.A., who stated that her ex-boyfriend threatened her with a six-inch kitchen knife. I.A. stated that the ex-boyfriend wanted her to go somewhere with him, and, when she refused, he took a knife out of his pocket and threatened to kill her if she did not go with him. I.A. told Thao that the ex-boyfriend only threatened her and did not touch her. But on the domestic-violence form that Thao had I.A. complete, she reported that the ex-boyfriend pushed her, kicked her, and pulled her hair. Thao did not see any injuries on I.A. and did not ask about the discrepancies between her oral statements and the written form. Thao and his partner were unable to locate the suspect.

The next day, I.A. called 911 and stated that appellant Abdullahi Jimale Jama was threatening her and another person, Y.G., with a knife in an apartment. Minneapolis Police Officer Eric Hagel responded to the call and found appellant and Y.G. standing in a parking lot near a dumpster behind the apartment building. I.A. identified appellant as the assailant. I.A. stated that appellant became angry and argumentative and grabbed a

large knife from the kitchen and threatened to kill I.A. and Y.G. Y.G. brought Hagel into the apartment and showed him the knife that appellant had used.

Appellant was arrested and charged with two counts of second-degree assault for threatening I.A. and Y.G. on August 9. The complaint was amended to add one count of pattern of stalking conduct and two counts of stalking conduct for the incident on August 8. The state dismissed the assault charge for threatening Y.G., and the remaining charges were tried to a jury.

The jury found appellant guilty of second-degree assault, pattern of stalking conduct, and stalking (possession of a dangerous weapon). The jury found appellant not guilty of stalking (prior conviction). The district court sentenced appellant on the second-degree-assault conviction. This appeal followed.

**D E C I S I O N**

The state must prove beyond a reasonable doubt all of the essential elements of the crime with which the defendant is charged. *State v. Pratt,* 813 N.W.2d 868, 873 (Minn. 2012). In considering a claim that the evidence is insufficient to support a conviction, we must "determine whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Fairbanks,* 842 N.W.2d 297, 306-07 (Minn. 2014) (quotation omitted). We must assume that "the jury believed the [s]tate's witnesses and disbelieved any contrary evidence." *State v. Buckingham,* 772 N.W.2d 64, 71 (Minn. 2009). "[D]etermining the credibility or reliability of a witness lies with the jury alone." *Id.* We will not disturb the verdict if the jury, acting with due regard for the

3

presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the offense charged. *Id.*

Appellant concedes that I.A.'s testimony, if believed, establishes the elements of the charged offenses. But he argues that the testimony was not credible because there were inconsistencies between I.A.'s trial testimony and her earlier statements and because her testimony was not corroborated.

Appellant argues that I.A.'s testimony about the August 8 incident is not credible because, when she filled out the domestic-abuse form, I.A. identified her assailant as Abdulahi Mohamed, and at trial she did not claim that Abdulahi Mohamed and Abdullahi Jama are the same person. Also, when speaking with Thao on August 8, I.A. described her assailant as her ex-boyfriend, but at trial, I.A. denied that she had ever had an intimate or romantic relationship with appellant.

At trial, I.A. was not asked why she identified her assailant as Abdulahi Mohamed when she filled out the domestic-abuse form, and we have not found any explanation in the record why two different names would apply to appellant. But, when she was asked at trial whether she knew a person named Abdullahi Jama, I.A. pointed at appellant, and she then identified him as the person who held a knife and threatened her on August 8 and 9. I.A.'s testimony also described her past relationship with appellant and explained that, although he wanted to have an intimate relationship with her, she declined. Taken as a whole, I.A.'s testimony leaves no confusion about her assailant's identity and provides a consistent description of her relationship with appellant.

4

Appellant argues that inconsistencies in I.A.'s accounts of the August 8 incident seriously undermined her credibility. I.A. told Thao that appellant did not touch her, but in the domestic-abuse form and at trial, I.A. reported that appellant kicked her, pushed her, and pulled her hair. When asked about this discrepancy at trial, I.A. explained that appellant had not touched her with the knife, but he had touched her with his hands.

Appellant also argues that I.A.'s credibility was undermined by her inconsistent testimony about where appellant got the knife on August 8. I.A. testified that appellant got the knife out of a car. I.A. did not recall telling Thao that appellant got the knife out of his pocket, and she explained that she "was freaking out" on August 8, thinking about how close she had come to being stabbed.

The inconsistencies that appellant has cited are minor. "Minor inconsistencies in a complainant's testimony, or between her testimony and previous statements, do not deprive a verdict of sufficient support if the complainant's testimony, taken as a whole, is consistent and credible." *State v. Higgins,* 422 N.W.2d 277, 281 (Minn. App. 1988); *see also State v. Stufflebean,* 329 N.W.2d 314, 319 (Minn. 1983) (noting that inconsistent testimony may be "a sign of the fallibility of human perception not proof that false testimony was given at trial," especially "when the testimony goes to the particulars of a traumatic and extremely stressful incident"). I.A. was acquainted with appellant before the incidents on August 8 and 9, and she consistently identified him as the person who wielded a knife during those incidents. The minor inconsistencies regarding the particulars of the incidents do not prove that I.A.'s testimony was false.

5

Appellant argues that, if he threatened I.A. on August 8, it is incredible that she would have willingly gone with him to the apartment on August 9. I.A. testified that appellant apologized to her on August 9 and convinced her to go with him. She testified further during cross-examination: "I was terrified. I'm like, okay, if I do as he says, then nothing is going to happen." The jury heard I.A.'s explanation, and we defer to its credibility determination.

Appellant incorrectly argues that I.A.'s trial testimony was not corroborated.[1] Corroborating evidence included the information provided to the dispatcher by the 911 caller on August 8, the description of appellant's acts in the domestic-abuse form, the information that I.A. provided during the 911 call on August 9, police descriptions of I.A.'s demeanor following both incidents, and Y.G.'s providing to police the knife used in the August 9 incident. *See Black's Law Dictionary* 636 (9th ed. 2009) (defining "corroborating evidence" as "evidence that differs from but strengthens or confirms what other evidence shows").

Appellant argues that the knife that Y.G. provided did not corroborate I.A.'s testimony because it was submitted to the Bureau of Criminal Apprehension (BCA) for DNA testing and the test results excluded appellant as a contributor to the mixture of DNA found on the knife. But BCA analyst Amber Folsom testified that the lack of appellant's DNA on the knife did not mean that he had not handled it. She testified that

---

[1] There is no requirement that I.A.'s testimony be corroborated. "It is well established that a conviction can rest upon the testimony of a single credible witness." *State v. Bliss*, 457 N.W.2d 385, 390 (Minn. 1990).

other factors could account for appellant's DNA not being on the knife, such as the knife being frequently handled by another person and only briefly by appellant, the rate at which appellant sheds skin cells, or appellant's palms being sweaty. Whether the knife that Y.G. showed police had been used by appellant, as I.A. and Y.G. testified, was a credibility determination for the jury to make.

In a pro se supplemental brief, appellant argues that his convictions are against the weight of the evidence, which requires a remand for a new trial. The supreme court has declined to address a challenge based on the weight of the evidence. *State v. Robinson,* 536 N.W.2d 1, 2 (Minn. 1995) (rejecting defendant's request that court weigh evidence and grant relief if verdict was against the weight of the evidence and affirming based on the *sufficiency* of the evidence). Citing *Gassler v. State*, appellant argues that this court should address his weight-of-the-evidence challenge in the interests of justice. 787 N.W.2d 575, 586-87 (Minn. 2010). *Gassler* involved a statutory provision that allowed a court to consider an untimely postconviction petition in the interests of justice; it did not involve a weight-of-the-evidence challenge. We decline to address the weight of the evidence.

Given the facts in the record and the legitimate inferences that can be drawn from those facts, and assuming that the jury believed the state's witnesses and disbelieved any contrary evidence, the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that appellant is guilty of the offenses charged.

**Affirmed**.